**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Debra Adrian | : | CIVIL ACTION |
| v. | : | |
| Federal Deposit Insurance Corporation as Receiver of Nova Bank, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                         ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| | | |
|---|---|---|
| December 14, 2012 | _Mark R. Kehoe_ | FDIC as Receiver of Nova Bank |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-557-2939 | 215-557-2990 | mkehoe@mdmc-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadngs or other papers as required by law, except as povided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Debra Adrian

**DEFENDANTS** Federal Deposit Insurance Corporation as Receiver of Nova Bank and see attached list.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* 215-557-0811
Daniel P. McElhatton, Esq., McElhatton Foley, P.C.
1600 Market St., Ste. 2500
Philadelphia, PA 19103

Attorneys *(If Known)*  See Attached List

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☒ 2  U.S. Government
     Defendant

☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
     Proceeding

☒ 2  Removed from
     State Court

☐ 3  Remanded from
     Appellate Court

☐ 4  Reinstated or
     Reopened

☐ 5  Transferred from
     another district
     *(specify)*

☐ 6  Multidistrict
     Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Removal - 12 U.S.C. 1819(b)(2)(B), 28 U.S.C. 1441; FIRREA, 12 U.S.C. 1819 et seq.

Brief description of cause:
Breach of Contract and Fraud Claims in Connection with Purchase of Real Estate

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $ In excess of
         $50,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE   12/14/12

SIGNATURE OF ATTORNEY OF RECORD   Mark R. Fehe

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## List of All Defendants

1. Federal Deposit Insurance Corporation as Receiver of Nova Bank
   1601 Bryan Street
   Dallas, TX 75201

2. PBB Property Holdings, LLC
   1235 Westlakes Drive, Suite 420
   Berwyn, PA 19312

3. Prudential Financial Inc., d/b/a/a Prudential Fox & Roach
   530 Walnut Street
   Philadelphia, PA 19106

4. Michael McCann
   530 Walnut Street
   Philadelphia, PA 19106

5. Coldwell Banker Real Estate
   223-25 Market Street
   Philadelphia, PA 19103

6. Carmel Archdekin
   223-25 Market Street
   Philadelphia, PA 19103

7. Pillar to Post, Inc.
   8001 Roosevelt Blvd., Suite 400
   Philadelphia, PA 19152

8. Chris Haslip
   8001 Roosevelt Blvd., Suite 400
   Philadelphia, PA 19152

9. Dougherty Development, LLC
   123 Pierce Street
   Philadelphia, PA 19312

10. Donald J. Dougherty, Jr.
    123 Pierce Street
    Philadelphia, PA 19312

## List of Counsel and the Parties They Represent

Mark R. Kehoe, Esquire
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1617 JFK Blvd., Suite 1500
Philadelphia, PA  19103-1815
Attorney for Defendant Federal Insurance Deposit Corporation as Receiver of Nova Bank

Daniel P. McElhatton, Esquire
Jarred N. Klein, Esquire
McElhatton Foley, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Attorneys for Plaintiff Debra Adrian

William D. Longo, Esquire
The Curtis Center, Fourth Floor
Independence Square
Philadelphia, PA  19106
Attorney for Defendants Coldwell Banker and Carmel Archdekin

Robert Douglas Billet, Esquire
Lance S. Forbes, Esquire
Billet & Associates, LLC
2000 Market Street, Suite 2803
Philadelphia, PA  19103-3201
Attorneys for Defendants Pillar to Post and Chris Haslip

Adam M. Smith, Esquire
Reger Rizzo & Darnall, LLP
Ciracentre, 13th Floor
2929 Arch Street
Philadelphia, PA  19104
Attorneys for Defendants Prudential Fox and Roach and Michael McCann

Thomas W. Sheridan, Esquire
Sheridan and Murray, LLC
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Attorneys for Defendants Donald J. Dougherty, Jr. and Dougherty Development, LLC

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Debra Adrian

Address of Defendant: See Attached List

Place of Accident, Incident or Transaction: _____

(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Unknown     Yes☐  No☐

Does this case involve multidistrict litigation possibilities?     Yes☐  No☒
RELATED CASE, IF ANY:
Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes☐  No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes☐  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes☐  No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes☐  No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _____, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _____    _____    _____
                                Attorney-at-Law            Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/14/12    _Mark R. Kehe_    44471
                   Attorney-at-Law        Attorney I.D.#

CIV. 609 (5/2012)

## List of All Defendants

1. Federal Deposit Insurance Corporation as Receiver of Nova Bank
   1601 Bryan Street
   Dallas, TX 75201

2. PBB Property Holdings, LLC
   1235 Westlakes Drive, Suite 420
   Berwyn, PA 19312

3. Prudential Financial Inc., d/b/a/a Prudential Fox & Roach
   530 Walnut Street
   Philadelphia, PA 19106

4. Michael McCann
   530 Walnut Street
   Philadelphia, PA 19106

5. Coldwell Banker Real Estate
   223-25 Market Street
   Philadelphia, PA 19103

6. Carmel Archdekin
   223-25 Market Street
   Philadelphia, PA 19103

7. Pillar to Post, Inc.
   8001 Roosevelt Blvd., Suite 400
   Philadelphia, PA 19152

8. Chris Haslip
   8001 Roosevelt Blvd., Suite 400
   Philadelphia, PA 19152

9. Dougherty Development, LLC
   123 Pierce Street
   Philadelphia, PA 19312

10. Donald J. Dougherty, Jr.
    123 Pierce Street
    Philadelphia, PA 19312

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA ADRIAN | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : |
| | : |
| FEDERAL DEPOSIT INSURANCE | : |
| CORPORATION AS RECEIVER OF | : |
| NOVA BANK, PBB PROPERTY | : |
| HOLDINGS, LLC, PRUDENTIAL | : |
| FINANCIAL, INC. d/b/a PRUDENTIAL | : |
| FOX & ROACH, MICHAEL MCCANN, | :    **NOTICE OF REMOVAL** |
| COLDWELL BANKER REAL ESTATE, | : |
| LLC, CARMEL ARCHDEKIN, PILLAR | : |
| TO POST, INC. AND CHRIS HASLIP | : |
| | : |
| Defendants | : |
| v. | : |
| | : |
| DONALD J. DOUGHERTY, JR. and | : |
| DOUGHERTY DEVELOPMENT, LLC | : |
| | : |
| Additional Defendants | : |

**TO: THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA:**

PLEASE TAKE NOTICE that pursuant to 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1441(a), Defendant Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Nova Bank ("FDIC-Receiver"), hereby removes the above-captioned action currently pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, under Docket No. 120302334 to the United States District Court for the Eastern District of Pennsylvania. As grounds for the removal of this case, FDIC- Receiver states as follows:

## BACKGROUND

1.      On October 26, 2012, the Commonwealth of Pennsylvania Department of Banking and Securities ("Department of Banking") closed Nova Bank and appointed the FDIC as Receiver of Nova Bank ("FDIC-Receiver").  A copy of the Department of Banking's determination appointing the FDIC as Receiver of Nova Bank and the FDIC's acceptance of that appointment are attached hereto as Exhibit "A."

2.      Upon its appointment, FDIC-Receiver succeeded by operation of law to "all rights, titles, powers and privileges" of Nova Bank including the power to resolve outstanding claims against the institution in receivership. 12 U.S.C. §§ 1821(d)(2)(A)(i); 1821(d)(3).

3.      On or about March 20, 2012, Plaintiff Debra Adrian ("Plaintiff") filed a complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania ("State Court") under docket no. 120302334 ("State Court Action").

4.      On November 13, 2012, Plaintiff filed a Second Amended Complaint ("Amended Complaint") in the State Court Action.  The complaint names Nova Bank, PBB Property Holdings, LLC, Prudential Financial Inc. d/b/a Prudential Fox & Roach; Michael McCann, Coldwell Banker Real Estate, LLC, Carmel Archdekin, Pillar to Post and Chris Haslip as defendants.  The complaint alleges various causes of action arising out of plaintiff's purchase of real estate located in Philadelphia.  The allegations against Nova Bank include common law fraud, intentional misrepresentation, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  The complaint asserts claims against Nova Bank for compensatory and punitive damages and attorney fees.  A true and correct copy of the Amended Complaint is attached hereto as Exhibit "B."

5.     After Nova Bank was closed on October 26, 2012 and the FDIC-Receiver was appointed as receiver, the FDIC-Receiver became the proper party in interest to defend Plaintiff's claims against Nova Bank.

6.     On November 30, 2012, the FDIC-Receiver was substituted for Nova Bank as the real party in interest in the State Court Action pursuant to Pa.R.C.P. 2352.  A true and correct copy of the filed Praecipe to Substitute Party Defendant is attached hereto as Exhibit "C."

7.     The FDIC-Receiver has not answered the Amended Complaint in the State Court Action nor, upon information and belief, has any other defendant.  Defendants Prudential Financial, Inc. and Michael McCann have filed preliminary objections to the Amended Complaint pursuant to Pa.R.C.P. 1028.

## BASIS FOR REMOVAL

8.     The FDIC-Receiver has a statutory right to remove cases in which it is a party, from state court to federal court pursuant to the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), *as amended*, 12 U.S.C. § 1819 *et seq.* Specifically, 12 U.S.C. § 1819(b)(2)(B) provides that "the Corporation may, without bond or security, remove any action, suit or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date of the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party."

9.     As noted, FDIC-Receiver was substituted as a party defendant on November 30, 2012. The instant removal is therefore brought within the 90-day limitations period set forth under 12 U.S.C. § 1819(b)(2)(B).

10.     The State Court Action is also removable pursuant to 28 U.S.C. § 1441(a), which provides that any civil action "of which the district courts of the United States have original

jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." As provided in 28 U.S.C. § 1331, the district courts have "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

11.     Any civil suit in which the FDIC, in any capacity, is a party is "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A).

12.     The so-called "state action" exception to removal set forth in 12 U.S.C. § 1819 (b)(2)(D) does not apply in this case. The FDIC-Receiver has federal defenses to the Plaintiff's claims, including that Plaintiff's claims for punitive damages are barred as a matter of federal law under 12 U.S.C. § 1825(b)(3), and that the Court lacks subject matter jurisdiction over Plaintiff's claims against the FDIC-Receiver because Plaintiff has not yet exhausted the mandatory administrative claims process set forth in 12 U.S.C. § 1821(d)(3)-(13). Those colorable federal defenses will require the interpretation and application of federal law, and place the action outside the state-action exception. See, e.g., Holmes v. FDIC, No. 11-CV-211, 2011 WL 1750227, * 4-5 (E.D. Wis. May 6, 2011); Pyle v. Meritor Savings Bank, 821 F. Supp. 1072, * 1077 (E.D. Pa. 1993).

13.     Pursuant to 12 U.S.C. § 1819(b)(4), the FDIC-Receiver is not required to post any bond and is not subject to payment of filing fees in the United States District Courts.

14.     Pursuant to 28 U.S.C. § 1446(d), the FDIC Receiver will promptly file a copy of this Notice of Removal with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania and will promptly serve notice of the filing of this removal to all parties of record in the State Court action, pursuant to 28 U.S.C. § 1446(d). A true and correct copy of the Notice of Filing of Notice of Removal is attached hereto as Exhibit "D."

15.   Venue properly lies with this Court pursuant to 28 U.S.C. § 1441(a) and 1446(a), as this action is presently pending in the Court of Common Pleas of Philadelphia County, Pennsylvania.

16.   A copy of all relevant process, pleadings and orders served by or upon FDIC Receiver is attached to this Notice of Removal (as Exhibit "B").

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

_Mark R. Kehoe_

MARK R. KEHOE, ESQUIRE
Attorney for Defendant
Federal Deposit Insurance Corporation
  as Receiver of Nova Bank

Date:   December 14, 2012

# EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF BANKING AND SECURITIES
HARRISBURG, PENNSYLVANIA

## DETERMINATION AND DESIGNATION OF RECEIVER

NOVA BANK, BERWYN,
CHESTER COUNTY PENNSYLVANIA

**WHEREAS,** from information available to the Commonwealth of Pennsylvania Department of Banking and Securities ("Department"); I have determined that Nova Bank is in violation of a Department Consent Order, has an impairment of its capital below the minimum required by law, is conducting its business in an unsafe manner and is in an unsafe and unsound condition to transact business; and

**WHEREAS,** from information available to the Department after review of the affairs of Nova Bank, I have determined that the Federal Deposit Insurance Corporation ("FDIC"), with its receivership office address of: FDIC as Receiver for Nova Bank, Dallas Regional Office, 1601 Bryan Street, Dallas, Texas, 75201, (214) 754-0098, should be immediately designated Receiver of Nova Bank; and

**NOW THEREFORE,** pursuant to the provisions of 71 P.S. § 733-16 and 12 U.S.C. § 1821(c)(3)(A) and the power, duty and authority vested in me by law, I do hereby immediately designate the FDIC as Receiver of Nova Bank as of the close of business of the bank on October 26, 2012 or such earlier time as circumstances required, with all powers, duties and responsibilities given to or imposed upon a Receiver under the provisions of the laws of this Commonwealth and the United States which authorize and direct the designation of such Receiver.

Dated:  October 26, 2012

By: _____



Victoria A. Reider
Executive Deputy Secretary of Banking and
Securities of the Commonwealth of
Pennsylvania

Case ID: 120302334

## ACCEPTANCE OF DESIGNATION AS RECEIVER

WHEREAS, the Commonwealth of Pennsylvania Department of Banking and Securities has taken possession of Nova Bank with its principal place of business located at 1235 Westlakes Drive, Berwyn, Pennsylvania 19312, to protect the interests of the depositors and creditors; and

WHEREAS, the Executive Deputy Secretary of Banking and Securities of the Commonwealth of Pennsylvania has tendered to the Federal Deposit Insurance Corporation a designation as the Receiver of Nova Bank pursuant to Section 16 of the Department of Banking and Securities Code, 71 P.S. § 733-16; and

NOW, THEREFORE, pursuant to 12 U.S.C. § 1821(c)(3)(A), for and on behalf of the Federal Deposit Insurance Corporation, I hereby accept the designation as Receiver of Nova Bank.

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER OF NOVA BANK

BY: _____

Jeannie M. Flood
Receiver-in-Charge

Dated:  October 26, 2012

Case ID: 120302334

# EXHIBIT B

**McELHATTON FOLEY, P.C.**
DANIEL P. McELHATTON, ESQUIRE
Attorney I.D. #20410
JARED N. KLEIN, ESQUIRE
Attorney I.D. # 92831
1600 Market Street – Suite 2500
Philadelphia, PA 19103
(215) 557-0811
dpmcelhatton@mcfol.com

**Attorneys for Plaintiffs**

*Filed and Attested by
PROTHONOTARY
13 NOV 2012 11:17 pm
M. MARTIN*

| | | |
|---|---|---|
| Debra Adrian | : | |
|        Plaintiff, | : | Court of Common Pleas |
| | : | Philadelphia County |
| | : | |
|     v. | : | March Term, 2012 |
| | : | |
| NOVA Bank; | : | No: 02334 |
| PBB Property Holdings, LLC; | : | |
| Prudential Financial Inc., d/b/a/ | : | |
| Prudential Fox & Roach; Michael McCann; | : | |
| Coldwell Banker Real Estate LLC; | : | |
| Carmel Archdekin; Pillar to Post, Inc.; and | : | |
| Chris Haslip | : | |
| | : | |
| | : | |
|     v. | : | |
| Donald J. Dougherty, Jr. and | : | |
| Dougherty Development, LLC | : | |
| | : | |
|       Additional Defendants | : | |

## NOTICE TO DEFEND
### (Continued Below)

1

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may be entered against you by the court without further notice for any money claims in this complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.<br>THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAYWER.<br>IF YOU CANNOT AFFORD TO HIRE A LAYWER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELGIBLE PERSONS AT A REDUCED FEE OR NO FEE.<br>Lawyer Referral and Information Service<br>1101 Market Street, 11th Floor<br>Philadelphia, PA 19107-2911<br>(215) 238-6333 | Le han demandado a usted en la corte. Si usted quiere defenderse de estas de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrtia sus defenses o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notification. Ademas, la corte puede decidir a favor del demandante y requiere que usted compla con todas las provisions de esta demanda. Usted puede perder dinero o sus propiedades u ostros derechos importantes para usted.<br><br>LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.<br><br>Lawyer Referral and Information Service<br>1101 Market Street, 11th Floor<br>Philadelphia, PA 19107-2911<br>(215) 238-6333 |

2

Case ID: 120302334

**McELHATTON FOLEY, P.C.**                    **Attorneys for Plaintiffs**
DANIEL P. McELHATTON, ESQUIRE
Attorney I.D. #20410
JARED N. KLEIN, ESQUIRE
Attorney I.D. # 92831
1600 Market Street – Suite 2500
Philadelphia, PA  19103
(215) 557-0811
dpmcelhatton@mcfol.com

| | | |
|---|---|---|
| Debra Adrian | : | |
|     Plaintiff, | : | Court of Common Pleas |
| | : | Philadelphia County |
| | : | |
|    v. | : | March Term, 2012 |
| | : | |
| NOVA Bank; | : | No: 02334 |
| PBB Property Holdings, LLC; | : | |
| Prudential Financial Inc., d/b/a/ | : | |
| Prudential Fox & Roach; Michael McCann; | : | |
| Coldwell Banker Real Estate LLC; | : | |
| Carmel Archdekin; Pillar to Post, Inc.; and | : | |
| Chris Haslip | : | |
| | : | |
|    v. | : | |
| Donald J. Dougherty, Jr. and | : | |
| Dougherty Development, LLC | : | |
| | : | |
|    Additional Defendants | : | |

---

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Debra Adrian, by and through her attorneys, McElhatton Foley P.C., for her Second

Amended Complaint against Defendants hereby avers as follows:

### Parties

1.    Plaintiff, Debra Adrian, is a distinguished veteran and citizen of the Commonwealth of

Pennsylvania, residing at 147 Watkins Street, Philadelphia, PA 19145.

2.    Defendant NOVA Bank is a Pennsylvania state chartered savings bank, with an address of

1235 Westlakes Dr., Suite 420, Berwyn, PA 19312, and with multiple Philadelphia locations

3

Case ID: 120302334

including: 1695 Grant Ave., Phila., PA 19115, 1420 Locust St., Phila., PA 19102, and 920 South Street., Phila. PA 19147.

3.     PBB Property Holdings LLC is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with a business address of 1235 Westlakes Dr., Suite 420, Berwyn, PA 19312.

4.     Defendant Prudential Financial Inc., d/b/a Prudential Fox & Roach is a corporation doing business at 530 Walnut Street, Philadelphia, PA 19106.

5.     Defendant Michael McCann is a real estate sales employee of Defendant Prudential Fox & Roach with a business address of 530 Walnut St., Philadelphia, PA 19106.

6.     Defendant Coldwell Banker Real Estate LLC is a limited liability company doing business at 223-25 Market St., Philadelphia, PA 19103.

7.     Defendant Carmel Archdekin is a real estate sales employee of Defendant Coldwell Banker, with a business address of 223-25 Market St., Philadelphia, PA 19103.

8.     Defendant Pillar to Post, Inc. is a corporation doing business at 8001 Roosevelt Blvd., Suite 400, Philadelphia, PA 19152.

9.     Defendant Chris Haslip is an employee of Pillar to Post, with a business address of 8001 Roosevelt Blvd., Suite 400, Philadelphia, PA 19152.

10.     Additional Defendant Donald J Dougherty is an adult male, residing in the Commonwealth of Pennsylvania at 123 Pierce Street, Philadelphia, PA 19312.

11.     Additional Defendant Dougherty Development LLC is a corporation doing business at 123 Pierce Street, Philadelphia, PA 19312.

## Jurisdiction

12.     Plaintiff resides in Philadelphia, the property at issue is located in Philadelphia, and all

Case ID: 120302334

defendants regularly conduct business in the City of Philadelphia. Venue is appropriate in this Court

pursuant to Pa.R.C.P. 1006 and 2179 (a) (2).

13.   This Court has personal jurisdiction over defendants.

**Factual Background**

A.   **Purchase of 147 Watkins Street**

14.   147 Watkins Street, Philadelphia, PA 19145 ("The Property"), is a property purchased by

Plaintiff Debra Adrian, a U.S. Army Veteran who served in the Gulf War, on May 11, 2011 for

$360,000.00.

15.   The Property was the first home purchased solely by Ms. Adrian, which she intended to share

with her partner, JoAnn Seppelt.

16.   Ms. Adrian closed on the sale on May 11, 2011.  Two weeks after settlement, Ms. Adrian

and her contractors discovered extensive structural damage throughout the property.  Upon

information and belief, this structural damage was caused by mold and water infiltration that had

been intentionally and deliberately concealed from Plaintiff by Defendants.

17.   Ms. Adrian and her contractors estimate the repairs required to restore The Property to

livable condition, together with expenses associated with Plaintiff's displacement from her home,

will exceed $200,000.00.

B.   **History of 147 Watkins Street Ownership**

18.   The Property has a tortured history, being among several homes on the 100 block of

Watkins and Morris streets constructed by Additional Defendant Donald J. Dougherty, Jr., or entities

under his control, in or around 2006.

19.   Upon information and belief, the construction was financed by Defendant NOVA Bank.

20.   As the financing bank, defendant NOVA Bank was intimately involved throughout the

5

construction of the property, conducted its own site inspections and approved draw requests on its construction loan.

21.     Subsequent to completing construction of the property, the developer, Mr. Dougherty, was indicted by the U.S. Attorney, pled guilty to tax evasion and bribery charges, and was sentenced to several years of incarceration.

22.     On April 24, 2009 Defendant NOVA Bank instituted mortgage foreclosure proceedings against Mr. Dougherty.

23.     On August 31, 2010, prior to the completion of foreclosure proceedings, Defendant NOVA Bank assigned the mortgage for the property to Defendant PBB Property Holdings.

24.     PBB Property Holdings obtained the property directly from a Sheriff sale for $96,700.00.

25.     Upon information and belief, Defendant PBB Property Holdings is an affiliated entity and/or division of Defendant NOVA Bank, with the same principal address, and acted as an agent for NOVA Bank during the subsequent sale of the property to Ms. Adrian.

26.     Upon information and belief, Defendant NOVA Bank directs the operations of PBB Property Holdings, and is a party in interest to each and every transaction entered into by PBB Property Holdings.  For example, during closing the parties executed an Escrow Agreement (attached hereto at Exhibit F).  That Escrow Agreement specifically states mail be sent to "PBB Property Holding LLC c/o Nova Bank."  The contact name of Michael Cosden is also provided, with a Novabank.com email address.

### C.     Listing and Agreement of Sale

27.     During NOVA Bank and PBB Property Holdings' ownership of The Property, extensive water, mold and structural damage occurred to The Property.

28.     Evidence of the initial discovery of this extensive damage can be seen on the attached

Case ID: 120302334

Exhibit A, which documents the existence of a mold issue at 147 Watkins Street, and repairs requested by Defendant Mike McCann, and approved by Defendant Nova Bank, to attempt to remediate that damage.

29.     Moreover, the attached Exhibit B, a site visit report of Thomas J. Finn Associates done at the request of the Bank on July 8, 2010, specifically notes with regard to 147 Watkins Stret that "Property was inspected and air conditioning was turned on (74).  A bleach/water spray was used on portions of the drywall on the first floor mold issue."

30.     Thus, it is clear that as of July 8, 2010, **9 months before** Plaintiff's first involvement with the property, Defendant Nova Bank / PBB Property Holdings was aware of the existence of mold at the property.

31.     Prior to the purchase of the property by Ms. Adrian, Defendants NOVA Bank and PBB Property Holdings retained Defendant Prudential Fox & Roach, and Defendant Michael McCann, to act as their agents and to list the property for sale.

32.     In January and February 2011, prior to the Agreement of Sale, home inspection, or closing, Defendant Michael McCann, acting as the agent for PBB Property Holdings and NOVA Bank, and as an employee of Defendant Prudential Fox & Roach, retained contractors to paint and repair interior walls and to repair the roof of the Property.

33.     These cosmetic repairs were intended to, and in fact did, conceal the extensive property damage from prospective buyers, including Ms. Adrian.  Copies of the receipts, dated **prior** to Plaintiff's Agreement of Sale are attached as Exhibit C.

34.     Upon information and belief, repairs to the property were far more extensive than revealed by receipts to which Plaintiff has been given access.  In fact, the repairs took place over the course of several weeks.

7

Case ID: 120302334

35.     On March 6, 2011, Debra Adrian signed an Agreement of Sale for the Property for a sale price of $360,000.000.  The Agreement is attached hereto as Exhibit D.

36.     Ms. Adrian was completely unaware, on March 6, 2011, the date she signed the agreement of sale, of any mold, water or other damage to the property, or of Defendants' aesthetic repairs to any area of the property.

### D.     Home Inspection

37.     On March 16, 2011, prior to closing, Ms. Adrian retained Defendant Pillar to Post to perform a home inspection.  The inspection was conducted that day and a report was issued.  The contract and report are attached hereto as Exhibit E.

38.     Ms. Adrian retained Pillar to Post at the specific suggestion of Defendants Coldwell Banker and Carmel Archdekin, who represented that Coldwell Banker has previously utilized the services of Pillar to Post, Inc.

39.     The inspection and report of Pillar to Post did not mention water or mold damage to the property or any other structural defects.

40.     Pillar to Post failed to exercise the ordinary skill and care expected of a home inspector and did not advise Ms. Adrian of the mold and water damage to the property.

41.     Upon information and belief, Ms. Adrian further alleges that Chris Haslip performed the inspection on behalf of Defendant Pillar to Post, and that Mr. Haslip is not a fully certified member of a home inspectors association, and as a result should have been supervised during his inspection, as required by the Pennsylvania Home Inspection Law.

### E.     Closing

42.     Closing and Settlement for the sale of 147 Watkins Street was scheduled for May 11, 2011.

Case ID: 120302334

43.　　　Shortly before closing, despite Defendants' efforts to conceal mold and water damage to the property, Ms. Adrian did determine that there was a "musty" small in a rear closet, and some water staining under a window.

44.　　　At the time of this discovery, Ms. Adrian was accompanied by her partner, JoAnn Seppelt, as well as Defendant Carmel Archdekin.

45.　　　At the time of closing, Plaintiff expressed to Defendant McCann, who she understood to be the agent of Defendants NOVA Bank and PBB Property Holdings, her concern about the musty smell and water staining.

46.　　　Defendant McCann initially responded by stating that the property had appreciated in value considerably since the Agreement of Sale.  McCann further stated that McCann would sell the property to other interested buyers if Plaintiff did not complete the closing.

47.　　　Defendant McCann did not tell the Plaintiff, at the closing or at any time prior to closing, that he had hired contractors to make repairs to the property, or that he had directed those contractors to paint or spackle over evidence of mold and water damage.

48.　　　Defendant McCann also did not tell Plaintiff of his emails to and from Nova Bank, attached as Exhibit A, that specifically discussed details of his repairs to the property.  These emails included a February 15, 2011 email (one month before Plaintiff's Agreement of Sale), in which Barbara Gordon, Asst. Vice President of Nova Bank, specifically authorized roof repairs to the property that were never disclosed to Plaintiff.  See Ex. A

49.　　　Moreover, neither Defendant McCann, nor any representative of the Defendants PBB Property Holdings or Nova Bank, told Plaintiff that, as Exhibit A shows, window leaks were a known concern in May 2010 and mold infiltration had already occurred.

50.　　　Defendant McCann did not provide Plaintiff with copies of the receipts, in McCann's

9

name, for the repairs he ordered for the property. Such receipts were only made available to Plaintiff after Plaintiff initiated a mediation proceeding – months **after** closing.

51.    After several rounds of negotiation at closing, and after looking at pictures of water staining under a window on Ms. Seppelt's digital camera, Defendant made several telephone calls to Nova Bank, after which Defendant McCann agreed to place $10,000 in escrow.

52.    Defendant McCann, during escrow negotiations, refused Plaintiff's request for full remediation in the Agreement. Specifically, McCann stated that the mold was "not a big deal" and that Plaintiff could "just put some bleach on it" to correct any problem.

53.    Defendant McCann also insisted that any remediation contained in the escrow agreement cover only the musty smell and window stain. McCann's position was a further attempt to conceal damage to other areas of the property, which McCann, PBB Property Holdings and Nova Bank knew about and/or had repaired, and wanted to conceal from Plaintiff.

54.    Despite Defendant McCann's attempts at intimidation, his minimization of a significant and known mold problem, and his intentional misstatements and omissions about the condition of the property, Ms. Adrian, with the intention of honoring her agreement of sale and believing McCann's assertions that the issues were minor and capable of remedy, agreed to proceed with closing on the sale and to have $10,000 placed in escrow at closing for the remediation of mold issues. The Escrow Agreement is attached hereto as Exhibit F.

55.    That $10,000 remains in escrow as of the date of filing this Complaint.

**F.    Post-Closing**

56.    Shortly after closing, Ms. Adrian retained a contractor to examine the house, and to locate and remediate the mold smell.

57.    However, Ms. Adrian and her contractors quickly discovered that the damage to The

Case ID: 120302334

Property was far more severe.

58.     Specifically, her contractors discovered repeated and extensive evidence of a cover-up of mold and water damage to the home, including the aforementioned repairs to the paint and drywall made to walls that, when removed, revealed extensive mold damage.

59.     The damage to her home was extensive, involved structural issues including damage to interior joists and beams, as well as damage to the outside façade of the property and many interior ceilings and walls.  Such damage rendered the property uninhabitable and forced Ms. Adrian and Ms. Seppelt into temporary housing, at great financial cost.

60.     As a result of Defendants' conduct, Ms. Adrian's home has been left with well over a hundred thousand dollars of damage (See Exhibit G), Ms. Adrian has been forced to reside in temporary housing, and has experienced considerable emotional strain and psychological turmoil.

## COUNT 1

### Common Law Fraud

*Defendants PBB Property Holdings, NOVA Bank, Prudential Fox & Roach and Michael McCann*

61.     Plaintiff repeats and realleges Paragraphs 1 through 60 above as if the same were set forth at length herein.

62.     The elements of fraud are well known.  There must be (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and damages to the recipient as the proximate result.  *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 285 (1971).

63.     Defendants' conduct in this case meets that test.

64.     A representation is fraudulently uttered if the maker knows of its falsity when uttering it. *Neuman v. Corn Exchange National Bank & Trust Co.*, 356 Pa. 442 (1947).

Case ID: 120302334

65.     In Pennsylvania, "active concealment of defects known to be material to the purchaser is legally equivalent to an affirmative misrepresentation." *National Building Leasing Inc., v. Byler*, 252 Pa. Super, 370, 376 (1977).

66.     In Pennsylvania, silence is actionable fraud where the nondisclosure is intentional and relates to information material to the transaction. *Roberts v. Estate of Barbagallo*, 366 Pa. Super 559 (1987).

67.     Defendants PBB Property Holdings, NOVA Bank, Prudential Fox & Roach and Michael McCann committed actionable fraud by misrepresenting the status of the property to Ms. Adrian both through their statements and intentional omissions.

68.     As evidenced by the attached exhibits A-C (and Plaintiffs belief that substantial additional repairs took place) and the subsequent discovery of mold behind walls to which repairs were made, Nova Bank/PBB Property Holdings, were specifically aware of window damage and mold issues at the time Ms. Adrian was viewing the property prior to placing a bid for purchase.

69.     The Bank was aware of this damage via the attached reports of the site inspector, sent to the property at Nova/PBB's request.  Prudential Fox & Roach, and Mike McCann had knowledge via communications with Nova Bank, and through the agency relationships McCann had to the other Defendants

70.     Defendants collectively failed to inform Plaintiff that significant mold and water damage had occurred at the property.  No Defendant, at any time, informed Plaintiff of either the repairs that were made or the reason such repairs were necessary.  Such silence was intentional and pertained to material information.

71.     The presence of significant mold and water damage is material to the transaction. Defendants' failure to disclose such material information was an intentional attempt to induce

12

Plaintiff into purchasing the faulty home.

72.     Moreover, in addition to their silence, Defendants took steps, through the actions of Defendant McCann as the agent for PBB Property Holdings, NOVA Bank and Prudential Fox & Roach, to cosmetically repair and otherwise actively conceal the extensive damage to the property.

73.     Neither Defendant McCann, his employer Prudential Fox & Roach, or his clients Defendants NOVA Bank and PBB Property Holdings informed Plaintiff of their discovery of damage to the property or their retention of contractors to cosmetically repair that damage.

74.     Defendants, through the actions of Defendant McCann, also affirmatively misrepresented the status of the property to Plaintiff.

75.     Throughout the course of Ms. Adrian's first visit to the property, through closing, Defendants failed to mention the mold and water damage they knew about at that time, and then attempted to minimize the extent and scope of the issue by stating it was "not a big deal" and that any mold could be remediated by an application of bleach.  Such misstatements were made in a clear and unambiguous attempt to induce Ms. Adrian to proceed with closing and complete her purchase of the property.

76.     Plaintiff at the time of closing, questioned Defendant McCann about the musty smell she sensed at the property.  At closing, Defendant McCann stated that the problem was "not a big deal" and that he would sell the property to someone else unless Plaintiff completed the transaction. McCann made these assertions despite being personally aware that remedial work had been performed at the property at his direction and that the property had a known mold issue.

77.     Defendant McCann further acted to induce Plaintiff to proceed with closing by threatening to sell the property to other mystery purchasers at a higher price.

78.     Plaintiff is informed and believes, and on that basis alleges, that the representations and

13

omissions made by McCann, on behalf of Prudential, PBB Property Holdings and Nova Bank, were false and that Defendants had knowledge of such falsity at the time.

79.     These misrepresentations and omissions, and suppression of information alleged herein, were made with the intent to induce Plaintiff to complete her closing and purchase the property.

80.     Ms. Adrian, having no reason to disbelieve the statements and actions of Defendants, proceeded with closing to her severe detriment.  Plaintiff's reliance was reasonable because Defendants, as sellers of the property, were required by law to disclose any and all known defects to Plaintiff.

81.     Such intentional misstatements and material omissions, designed to induce the actions of Ms. Adrian, are evidence of Fraud.

82.     As a direct result of Defendants fraudulent statements, Ms. Adrian has incurred extensive financial and psychological damage.

83.     Plaintiff is entitled to punitive damages as a result of the willful and egregious conduct of Defendants.

**WHEREFORE**, Plaintiff demands judgment in her favor in an amount exceeding $50,000, together with pre and post judgment interest, costs of suit, and such other relief, including exemplary damages, deemed appropriate by judge or jury.

## COUNT II

### Intentional Misrepresentation / Intentional Concealment

*Defendants Nova Bank, PBB Property Holdings, Prudential Fox & Roach and Michael McCann*

84.     Plaintiff repeats and realleges Paragraphs 1 through 83 above as if the same were set forth at length herein.

85.     To state a claim for intentional misrepresentation the following must be proved: (1) a

Case ID: 120302334

representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Kramer v. Dunn*, 749 A.2d 984, 991 (Pa. Super. 2000).

86.     Both a seller (Nova and PBB Property Holdings) and a seller's listing agent can be liable for intentional concealment.  In fact, the Pennsylvania Supreme Court has held that "we have recognized the tort of intentional misrepresentation and intentional concealment in the context of real estate broker liability to the buyer of residential real property." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa 1999); *see also Aiello v. Ed Saxe Real Estate, Inc*, 508 PA 553 (holding that real estate broker may be liable for intentional misrepresentation.).

87.     Defendants actions toward Plaintiff meet the test for intentional misrepresentation and intentional concealment.

88.     As evidenced by the attached exhibits A-C (and Plaintiff's belief that substantial additional repairs took place) and the subsequent discovery of mold behind walls to which repairs were made, Defendants were aware of the mold issues at the time Ms. Adrian was viewing the property prior to placing a bid for purchase.

89.     Defendants collectively failed to inform Plaintiff that significant mold and water damage had occurred at the property.

90.     The presence of significant mold and water damage is material to the transaction. Defendants' failure to disclose such material information was an intentional attempt to induce Plaintiff into purchasing the faulty home.

91.     Moreover, in addition to their silence, Defendants took steps, through the actions of Defendant McCann as the agent for PBB Property Holdings, NOVA Bank and Prudential Fox &

Roach, to cosmetically repair and otherwise actively conceal the extensive damage to the property.

92.     Neither Defendant McCann, his employer Prudential Fox & Roach, or his clients Defendants NOVA Bank and PBB Property Holdings informed Plaintiff of their prior discovery of damage to the property or their retention of contractors to cosmetically repair that damage.

93.     Defendants, through the actions of Defendant McCann, also affirmatively misrepresented the status of the property to Plaintiff.

94.     Throughout the course of Ms. Adrian's first visit to the property, through closing, Defendants failed to mention mold and water damage, and then attempted to minimize the extent and scope of the issue by stating it was "not a big deal" and that any mold could be remediated by an application of bleach. Such misstatements were made in a clear and unambiguous attempt to induce Ms. Adrian to proceed with closing and complete her purchase of the property.

95.     Plaintiff at the time of closing, questioned Defendant McCann about the musty smell she sensed at the property. At closing, Defendant McCann stated that the problem was "not a big deal," could be cured by simply bleaching the walls, and that he would sell the property to someone else unless Plaintiff completed the transaction. McCann made these assertions despite being aware that remedial work had been performed at the property at his direction.

96.     Defendant McCann further acted to induce Plaintiff to proceed with closing by threatening to sell the property to other mystery purchasers at a higher price.

97.     Plaintiff is informed and believes, and on that basis alleges, that the representations and omissions made by McCann, on behalf of Prudential, PBB Property Holdings and Nova Bank, were false and that Defendants had knowledge of such falsity at the time.

98.     These misrepresentations and omissions, and suppression of information alleged herein, were made with the intent to induce Plaintiff to complete her closing and purchase the property.

16

99.     Ms. Adrian, having no reason to disbelieve the statements and actions of Defendants, proceeded with closing to her severe detriment.  Plaintiff's reliance was reasonable because Defendants, as sellers of the property, were required by law to disclose any and all known defects to Plaintiff.

100.    Such intentional misstatements and material omissions, designed to induce the actions of Ms. Adrian, are evidence of Fraud.

101.    As a direct result of Defendants fraudulent statements, Ms. Adrian has incurred extensive financial and psychological damage.

102.    Plaintiff is entitled to punitive damages as a result of the willful and egregious conduct of Defendants.

**WHEREFORE**, Plaintiff demands judgment in her favor in an amount exceeding $50,000, together with pre and post judgment interest, costs of suit, and such other relief, including exemplary damages, deemed appropriate by judge or jury.

## COUNT III

### Breach of Fiduciary Duty

*Defendants Prudential Fox & Roach and Michael McCann*

103.    Plaintiff repeats and realleges Paragraphs 1 through 102 above as if the same were set forth at length herein.

104.    Defendants Prudential Fox & Roach and Michael McCann were retained to act as selling or listing agents for the property.

105.    As Defendant Nova Bank and PBB Property Holdings' real estate agents, Defendants owed Plaintiff a fiduciary duty to act with the utmost care, integrity, honesty and loyalty, including a duty to investigate and learn the material facts which may have affected Plaintiff's decision to

17

purchase the property and to counsel Plaintiff regarding those facts.

106.     A fiduciary relationship existed between Plaintiff and Defendants pursuant to which Plaintiff, as a person who lacked experience with the purchase of real estate, placed Defendants in a position of trust and confidence.  As a result, Plaintiff was dependent upon and vulnerable to the actions and omission of Defendants.

107.     Real estate agents have a fiduciary obligation and duty to act in the best interest of those that place their trust in them, including both their clients, and potential purchasers, such as Ms. Adrian.

108.     Under Pennsylvania law, a seller's listing agent and/or broker owes a duty of care to the purchaser, and can be liable for a breach of that duty.  *Bortz v. Noon*, 729 A.2d 555 (Pa 1999).

109.     In Pennsylvania, "a vendor or his agent may be liable not only for failure to disclose a dangerous condition but also for failure to disclose material information." *Roberts v. Estate of Barbagallo*, 366 Pa.Super. 559, 568 (1987); *see also Bukoskey v. Palombo*, 2007 WL 4922803 (Pa.Com.Pl 2007).

110.     Furthermore, where a broker, such as Defendants McCann and Prudential Fox & Roach, "is employed to sell real estate misrepresents or conceals a material fact he may be found liable to the purchaser in damages." *Smith v. Renaut*, 387 Pa.Super 299, 305 (1989).

111.     At all times, Defendants Prudential Fox & Roach and Michael McCann intentionally, and in willful breach of their fiduciary duty to Plaintiff, and with reckless disregard of Plaintiff's rights, concealed key facts regarding the property, including the existence of mold, their efforts to conceal that mold, and the extensive damage to the property.

112.     Specifically, Defendants breached their fiduciary duty to Plaintiff in the following ways:

18

a.      Failing to disclose mold and water damage to Plaintiff.  Such water and mold damage was known to Defendants' prior to closing as evidenced by the attached Exhibit A-C;

b.      Failing to disclose to Plaintiff the remedial repairs made at the direction of Defendant McCann;

c.      Misrepresenting to Plaintiff the extent of the damage at closing through McCann's comments that the damage was "not a big deal" and could be remediated with a bleach application;

d.      Failing to advise Plaintiff of the history of this property, and other defective properties, constructed by Mr. Dougherty; and

e.      Threatening Plaintiff at closing by McCann's statements that he would sell the property to other interested parties if Plaintiff did not bend to Defendant's escrow demands and timeline.

113.    Defendants' breach of their fiduciary duty prevented Plaintiff from acting to protect herself from significant financial and psychological harm.

114.    As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff has suffered extensive and significant damages.

115.    Plaintiff is entitled to punitive damages as a result of the willful and egregious conduct of Defendants.

**WHEREFORE**, Plaintiff demands judgment in her favor in an amount exceeding $50,000, together with pre and post judgment interest, costs of suit, and such other relief, including exemplary damages, deemed appropriate by judge or jury.

Case ID: 120302334

## COUNT IV

### Breach of Fiduciary Duty

*Defendants Coldwell Banker and Carmel Archdekin*

116.     Plaintiff repeats and realleges Paragraphs 1 through 115 above as if the same were set forth at length herein.

117.     Defendants Coldwell Banker and Carmel Archdekin were retained by Ms. Adrian to act as the buyer's real estate agent for the property.

118.     As Plaintiff's real estate agents, Defendants owed Plaintiff a fiduciary duty to act with the utmost care, integrity, honesty and loyalty, including a duty to investigate and learn the material facts which may have affected Plaintiff's decision to purchase the property and to counsel Plaintiff regarding those facts.

119.     A fiduciary relationship existed between Plaintiff and Defendants pursuant to which Plaintiff, as a person who lacked experience with the purchase of real estate, placed Defendants in a position of trust and confidence.  As a result, Plaintiff was dependent upon and vulnerable to the actions and omission of Defendants.

120.     Defendants breached their fiduciary duty to Plaintiff by failing to investigate, learn or share with Plaintiff the troubled history of the property, failing to investigate the existence of construction defects present on the property or similar property constructed by Mr. Dougherty, and failing to properly advise Plaintiff at the time of closing.

121.     Specifically, Defendant Archdekin, despite being present for the discovery of the musty smell, failed to advise Plaintiff this could be indicative of a larger problem, recommending to Plaintiff a lowball escrow amount of only $1,000.00 and, thereafter, failing to advise Plaintiff that said problem could not be corrected with a $10,000 escrow payment.

Case ID: 120302334

122.     Moreover, at closing, Defendant Archdekin failed protect Plaintiff from Defendant McCann's intimidation tactics, failed to advise Plaintiff that she had the option to retain counsel, and otherwise failed to represent Plaintiff's best interests.  In fact, Defendant Archdekin sat silently and at the opposite end of the table from Plaintiff throughout the closing, despite her duty to represent Plaintiff, and allowed Plaintiff to negotiate her escrow agreement on her own.

123.     Upon information and belief, Carmel Archdekin's commission was paid at closing, therefore Defendant Archdekin had a direct financial interest in having Plaintiff complete her purchase on the scheduled date and time.

124.     As a direct and proximate result of Defendants breaches of its fiduciary duties, Plaintiff has suffered extensive and significant damages.

125.     Plaintiff is entitled to punitive damages as a result of the reckless and egregious conduct of Defendants.

**WHEREFORE**, Plaintiff demands judgment in her favor in an amount exceeding $50,000, together with pre and post judgment interest, costs of suit, and such other relief, including exemplary damages, deemed appropriate by judge or jury.

## COUNT V

### Breach of Contract

*Defendants PBB Property Holdings and NOVA Bank*

126.     Plaintiff repeats and realleges Paragraphs 1 through 125 above as if the same were set forth at length herein.

127.     Plaintiff and Defendants entered into an Agreement of Sale on March 6, 2011.  Pursuant to its terms, and the implied covenant of good faith and fair dealing in every contract, Defendant was required to disclose all known material defects affecting the property.

21

Case ID: 120302334

128.    As evidenced by Exhibit A-C, Nova bank continued to be involved in the sale of this property by PBB Property Holdings. One month before the Agreement of sale, Barbara Gibbs, Asst. Vice President of Nova Bank, authorized Mike McCann to conduct roof repairs at the property. See Exhibit A.

129.    Moreover, the attached Exhibit B, a site visit report of Thomas J. Finn Associates done at the request of the Bank on July 8, 2010, specifically notes with regard to 147 Watkins Stret that "Property was inspected and air conditioning was turned on (74). A bleach/water spray was used on portions of the drywall on the first floor mold issue."

130.    Plaintiff performed all conditions, covenants and promises required of her under the contract.

131.    Defendants breached the contract by failing to disclose the existence of known mold and water damager present at the property. Such conditions are material conditions that affect the value, habitability and safety of the property.

132.    Had Defendants honored the terms of the contract, Plaintiff would not have completed her purchase of the property.

133.    In so doing, Defendants acted recklessly, maliciously, in bad faith, and without good cause, thereby preventing Plaintiff from receiving her expected benefits under the contract.

134.    As a direct and proximate result of the aforementioned wrongful conduct committed by Defendants, Ms. Adrian has suffered and will continue to suffer damages and economic loss.

135.    Plaintiff is entitled to punitive damages as a result of the willful and egregious conduct of Defendants.

**WHEREFORE,** Plaintiff demands judgment in her favor in an amount exceeding $50,000, together with pre and post judgment interest, costs of suit, and such other relief, including exemplary

Case ID: 120302334

damages, deemed appropriate by judge or jury.

## COUNT VI

### Professional Negligence

*Defendants Prudential Fox & Roach, Michael McCann, Coldwell Banker and Carmel Archdekin,*

136.     Plaintiff repeats and realleges Paragraphs 1 through 135 above as if the same were set forth at length herein.

137.     As real estate agents, Defendants owe a duty of care to their clients, including prospective purchasers like Plaintiff.

138.     Defendants each had a duty to disclose to Ms. Adrian what they knew, or reasonably should have known, about the condition of the property prior to closing.

139.     Such a duty stems from Defendants' status as either seller, seller's listing agent or buyers' agent.

140.     Defendants knew, or reasonably should have known, of the history of the property, of the mold issues, and of the water infiltration issues at the time Ms. Adrian was viewing the property prior to placing a bid for purchase.

141.     Defendants collectively failed to inform Plaintiff that significant mold and water damage had occurred at the property.  Defendants failed to inform Plaintiff that remedial repairs had been made to the property prior to closing as well.

142.     Defendant McCann further breached his duty to Plaintiff by minimizing the extent of the mold problem.

143.     Moreover, due to the extent and nature of the damage, Defendants knew or reasonably should have known that the damage could not be corrected with a $10,000 escrow payment at closing, and had a duty to disclose that fact.

Case ID: 120302334

144.      As a direct result of Defendants breach of their professional duty, Ms. Adrian has incurred

extensive financial and psychological damage.

WHEREFORE, Plaintiff demands judgment in her favor in an amount exceeding $50,000,

together with pre and post judgment interest, costs of suit, and such other relief, including exemplary

damages, deemed appropriate by judge or jury.

## COUNT VII

### Breach of Contract

*Defendant Pillar to Post and Chris Haslip*

145.      Plaintiff repeats and realleges Paragraphs 1 through 144 above as if the same were set

forth at length herein.

146.      Defendant Pillar to Post was engaged by Ms. Adrian, at the suggestion of Defendants

Coldwell Banker and Archdekin, to perform an inspection of the property on March 16, 2011, for the

purpose of evaluating the condition of the property prior to sale.

147.      Ms. Adrian entered into a contract with Defendant Pillar to Post, dated March 16, 2011,

which obligated Pillar to Post to conduct an inspection of the property.

148.      The inspection undertaken by Pillar to Post was deficient in several respects, and did not

recognize defects that a trained, qualified appraiser should have reported.

149.      Moreover, Defendant Pillar to Post sent Chris Haslip, an inspector not fully certified by a

home inspectors association, to perform the home inspection, in violation of paragraph 1 of the

contract and the Pennsylvania Home Inspection Law.

150.      As a direct and proximate result of Defendant's breach of the contract, Plaintiff sustained

significant financial and psychological damage.

WHEREFORE, Plaintiff demands judgment in her favor in an amount exceeding $50,000,

Case ID: 120302334

together with pre and post judgment interest, costs of suit, and such other relief, including exemplary damages, deemed appropriate by judge or jury.

## COUNT VIII

### Intentional Infliction of Emotional Distress

*Defendants Nova Bank, PBB Property Holdings, Prudential Fox & Roach, Mike McCann Coldwell Banker and Carmel Archdekin*

151.    Plaintiff repeats and realleges Paragraphs 1 through 150 above as if the same were set forth at length herein.

152.    To demonstrate Intentional Infliction of Emotional Distress, Plaintiff must show that (1) the conduct was extreme and outrageous; (2)  the conduct was intentional or reckless; (3) the conduct caused motional distress; and (4) that distress must be severe. *Hooten v. Penna. College of Optometry*, 601 F.Supp. 1151, 1155 (E.D.Pa.1984);

153.    Defendants' conduct as set forth throughout this Complaint was intentional, outrageous, and extreme and caused, and continues to cause, severe emotional distress to Ms. Adrian as a well as the damages and injuries set forth herein.

154.    Defendants conduct was intentionally designed to induce Plaintiff to purchase a home Defendants knew to be faulty.

155.    Plaintiff's emotional distress was severe, and necessitated ongoing medical treatment.

156.    Plaintiff is entitled to punitive damages as a result of the willful and egregious conduct of Defendants.

**WHEREFORE**, Plaintiff demands judgment in her favor in an amount exceeding $50,000, together with pre and post judgment interest, costs of suit, and such other relief, including exemplary damages, deemed appropriate by judge or jury.

Case ID: 120302334

## COUNT IX

### Negligent Infliction of Emotional Distress

*Defendants Nova Bank, PBB Property Holdings, Prudential Fox & Roach, Mike McCann
Coldwell Banker and Carmel Archdekin*

157.     Plaintiff repeats and realleges Paragraphs 1 through 156 above as if the same were set forth at length herein.

158.     Defendants each had a duty to disclose to Ms. Adrian what they knew, or reasonably should have known, about the condition of the property prior to closing.

159.     Such a duty stems from Defendants' status as either seller, seller's listing agent, buyer's agent or home inspector.

160.     Defendants knew, or reasonably should have known, of the mold issues at the time Ms. Adrian was viewing the property prior to placing a bid for purchase, and Defendants collectively failed to inform Plaintiff that significant mold and water damage had occurred at the property.

161.     Defendant's conduct as set forth above was an extreme departure from what an ordinary, reasonable, prudent person would have done in the same circumstance(s).

162.     Defendants' conduct has resulted in emotional distress to the Plaintiff, which has required ongoing medical treatment.

163.     Plaintiff is undergoing such treatment, and has incurred out of pocket medical expenses and pain and suffering as a direct and proximate result of Defendants' conduct.

164.     Defendant's conduct as set forth above was negligent and as a result thereof caused, and continues to cause, severe emotional distress to Plaintiff as well as the damages and injuries set forth above.

**WHEREFORE**, Plaintiff demands judgment in her favor in an amount exceeding $50,000, together with pre and post judgment interest, costs of suit, and such other relief, including exemplary

Case ID: 120302334

damages, deemed appropriate by judge or jury.

## COUNT X

### Violation of Pennsylvania Real Estate Seller Disclosure Law

*Defendant PBB Property Holdings*

165.    Plaintiff repeats and realleges Paragraphs 1 through 164 above as if the same were set forth at length herein.

166.    The Pennsylvania Real Estate Seller Disclosure Law obligates the seller of residential real estate to disclose all material defects in a property.

167.    Although Defendant PBB Holdings acquired the property as the beneficiary of a Sheriff sale, and as such was not obligated to provide a Seller's Disclosure, the limitation of 68 PS § 7103 is not absolute.  Defendant is still bound by 68 PS § 7313, which notes that "the specification of items for disclosure in this chapter or in any form of property disclosure statement promulgated by the State Real Estate Commission does not limit or abridge any obligation for disclosure created by any other provision of law or that may exist in order to avoid fraud, misrepresentation or deceit in this transaction."

168.    In this case, Defendant PBB Property Holdings, through its affiliation with Defendant NOVA Bank, was intimately familiar with the property, including several inspections during the approval process for draw requests on the construction loan.

169.    As a result, Defendant knew or should have known that the property had extensive mold and water damage, and failed to provide a Seller's Disclosure that revealed that damage, even after there were repairs initiated by their agents, Defendants McCann and Prudential Fox & Roach.

170.    Defendants' failure to disclose known material defects to Plaintiff constitutes a violation of the Act.

27

**WHEREFORE**, Plaintiff demands judgment in her favor in an amount exceeding $50,000, together with pre and post judgment interest, costs of suit, and such other relief, including exemplary damages, deemed appropriate by judge or jury.

## COUNT XI

### Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law

*Defendant Pillar to Post and Chris Haslip*

171.     Plaintiff repeats and realleges Paragraphs 1 through 170 above as if the same where set forth at length herein.

172.     The Pennsylvania Home Inspection Law, codified at 68 PS §§ 7501 et seq., regulates the duties and obligations of home inspectors.

173.     Pursuant to that Act, Home Inspectors are required to be a full member in good standing of a national inspection association.

174.     Defendant Pillar to Post provided Chris Haslip as an inspector, who was not fully certified by an accredited professional organization, in violation of the Act.

175.     Moreover, the Act at Section 7507 voids any limitations in home inspection contracts that limit liability for gross or willful misconduct.

176.     Defendant's contract, attached as Exhibit C, contains an express provision that liability be limited "to the fee paid for the inspection services and report...".  Such language is in violation of the Act.

177.     Violations of the Home Inspection Law are treated as violations of the Pennsylvania Consumer Protection Act.  As a result, Plaintiff is entitled to actual damages, treble damages, and an award of reasonable attorney's fees pursuant to 73 PS § 201-9.2

**WHEREFORE**, Pursuant to Section 201-9.2, Plaintiffs requests judgment in her favor

28

together with an award of actual damages, treble damages and reasonable attorney's fees, together with pre and post judgment interest, costs of suit, and such other relief deemed appropriate by judge or jury.

## COUNT XII

### Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law

*PBB Property Holdings, NOVA Bank, Prudential Fox & Roach and Michael McCann*

178.     Plaintiff repeats and realleges Paragraphs 1 through 177 above as if the same where set forth at length herein.

179.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 P.S. §201-1 *et. Seq.*) prohibits "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

180.     Defendants PBB Property Holdings, NOVA Bank, Prudential Fox & Roach and Michael McCann committed actionable fraud and violated the Act by misrepresenting the status of the property to Ms. Adrian both through their statements and intentional omissions.

181.     As evidenced by Exhibit A-C (and Plaintiffs belief that substantial additional repairs took place) and the subsequent discovery of mold behind walls to which repairs were made, Defendants were aware of the mold issues at the time Ms. Adrian was viewing the property prior to placing a bid for purchase.

182.     Defendants collectively failed to inform Plaintiff that significant mold and water damage had occurred at the property. No Defendant, at any time, informed Plaintiff of the existence of mold or of the repairs that were made to the property. Such silence was intentional and pertained to material information.

183.     The presence of significant mold and water damage is material to the transaction.

29

Defendants' failure to disclose such material information was an intentional attempt to induce Plaintiff into purchasing the faulty home.

184.    Moreover, in addition to their silence, Defendants took steps, through the actions of Defendant McCann as the agent for PBB Property Holdings, NOVA Bank and Prudential Fox & Roach, to cosmetically repair and otherwise actively conceal the extensive damage to the property.

185.    Neither Defendant McCann, his employer Prudential Fox & Roach, or his clients Defendants NOVA Bank and PBB Property Holdings informed Plaintiff of their discovery of mold and window leaks at the property, or the need for roof repairs to the property, or of their retention of contractors to cosmetically repair that damage.

186.    Defendants, through the actions of Defendant McCann, also affirmatively misrepresented the status of the property to Plaintiff.

187.    Throughout the course of Ms. Adrian's first visit to the property, through closing, Defendants failed to mention mold and water damage they were specifically aware of, and then attempted to minimize the extent and scope of the issue by stating it was "not a big deal" and that any mold could be remediated by an application of bleach.  Such misstatements were made in a clear and unambiguous attempt to induce Ms. Adrian to proceed with closing and complete her purchase of the property.

188.    Plaintiff at the time of closing, questioned Defendant McCann about the musty smell she sensed at the property.  At closing, Defendant McCann stated that the problem was "not a big deal" and that he would sell the property to someone else unless Plaintiff completed the transaction. McCann made these assertions despite being aware of the remedial work had been performed at the property at his direction.

189.    Defendant McCann further acted to induce Plaintiff to proceed with closing by threatening

to sell the property to other mystery purchasers at a higher price.

190.    Plaintiff is informed and believes, and on that basis alleges, that the representations and omissions made by McCann, on behalf of Prudential, PBB Property Holdings and Nova Bank, were false and that Defendants had knowledge of such falsity at the time.

191.    These misrepresentations and omissions, and suppression of information alleged herein, were made with the intent to induce Plaintiff to complete her closing and purchase the property.

192.    Ms. Adrian, having no reason to disbelieve the statements and actions of Defendants, proceeded with closing to her severe detriment. Plaintiff's reliance was reasonable because Defendants, as sellers of the property, were required by law to disclose any and all known defects to Plaintiff.

193.    Such intentional misstatements and material omissions, designed to induce the actions of Ms. Adrian, are evidence of Fraud.

194.    As a direct result of Defendants fraudulent statements, Ms. Adrian has incurred extensive financial and psychological damage.

**WHEREFORE**, Pursuant to Section 201-9.2, Plaintiffs requests judgment in her favor together with an award of actual damages, treble damages and reasonable attorney's fees, together with pre and post judgment interest, costs of suit, and such other relief deemed appropriate by judge or jury.

**Dated: November 13, 2012**                    **DEMAND FOR JURY TRIAL**

Respectfully submitted,

BY: /s/ Daniel P. McElhatton
DANIEL P. McELHATTON, ESQUIRE
JARED N. KLEIN, ESQUIRE
McElhatton Foley P.C

31

1600 Market Street
Suite 2500
Philadelphia, PA 19103
215-557-0811
215-557-0814 (fax)
Attorney for Plaintiffs
Attorney ID's # 20410, 92831
dpmcelhatton@mcfol.com

Case ID: 120302334



# Exhibit A

Case ID: 120302334

**Barbara A. Gibbs**

| | |
|---|---|
| **From:** | Barbara A. Gibbs |
| **Sent:** | Tuesday, February 15, 2011 12:57 PM |
| **To:** | 'Mike Mccann' |
| **Cc:** | Michael Cosden |
| **Subject:** | FW: Morris/Watkins |
| **Attachments:** | Morris Watkins.pdf |

Hi Mike,

Please accept this email as your authorization from Mike Cosden to go ahead with the roof repairs as outlined in the attached proposals. Thanks again !

Best regards,

Barbara Gibbs
Assistant Vice President
Construction & Special Assets Management
856-686-9700 X2312 Office
1-866-628-9506 Fax
bgibbs@novabank.com



Woodbury Heights
30 Elm Avenue
Woodbury Heights, NJ 08097
www.novabank.com

**From:** Mike Mccann [mailto:mccann@mccannteam.com]
**Sent:** Thursday, February 10, 2011 11:11 AM
**To:** Michael Cosden; Barbara A. Gibbs
**Subject:** Morris/Watkins

Please see attached for estimates from the roofer.  Please give me authorization and I can have them start the work.

Thanks,
Mike

Mike McCann
"The Real Estate Man"
Prudential Fox & Roach
530 Walnut St, Ste 260
Philadelphia, PA 19106
215-627-6005 Office
215-440-8345 Direct
215-627-8106 Fax
www.mccannteam.com
www.facebook.com/McCannTeam

#13 Real Estate Team in Transactions in the USA by REAL *Trends* as featured in Wall Street Journal

1

PBB 0001
Case ID: 120302334

FAX-215-627-8106  Feb. 10. 2011  9:04AM

No. 4362   P. 2

2-9-2011

# JRH CONTRACTING
## (D.B.A.)
## NOCELLA CONTRACTING
P.O. BOX 965, GLENSIDE, PA 19038
### 215-416-6756

147 WAKIN ST

TOP MAIN WHITE RUBBER ROOF. NEEDS GUTTER MEDAL IN BACK AND FRONT. ALSO NEEDS TO BE REMIXED WITH CEMENT AND RAG. FRONT LOWER HAS DECK ON IT. CAN NOT SEE.

TOTAL COST $2.00.00

Thank you.

**Barbara A. Gibbs**

| | |
|---|---|
| **From:** | Michael Cosden |
| **Sent:** | Friday, February 04, 2011 3:17 PM |
| **To:** | 'Karen McCormick'; Barbara A. Gibbs |
| **Subject:** | RE: Watkins & Morris Sts |

Please allow this email to serve as confirmation to have roofer check out leak situations.

**PLEASE NOTE MY NEW DIRECT PHONE & MAILING ADDRESS BELOW**

Michael Cosden
**Vice President - Special Assets Manager**
NOVA Bank
mcosden@novabank.com
Direct Phone (856) 686-9700 Ext. 2311
Direct Fax (866) 628-9506

Please note my new address and contact information:



30 Elm Avenue
Woodbury Heights, NJ 08097
www.novabank.com

NOTICE: This message is intended only for the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Thank you.

**From:** Karen McCormick [mailto:karenmc520@hotmail.com]
**Sent:** Friday, February 04, 2011 2:51 PM
**To:** Barbara A. Gibbs; Michael Cosden
**Subject:** Watkins & Morris Sts

Good Afternoon,

We just received a call from the contractor working at the property, he reported that there appears to be some roof leakage in several of the properties. Please confirm that we can contact our roofer to check out the situation.

Thanks so much, Karen
Mike McCann's Office
Prudential Fox & Roach Realtors

1

PBB 0007

Case ID: 120302334

**Barbara A. Gibbs**

| | |
|---|---|
| **From:** | Michael Cosden |
| **Sent:** | Friday, January 28, 2011 12:59 PM |
| **To:** | 'Mike Mccann' |
| **Cc:** | Barbara A. Gibbs |
| **Subject:** | RE: Open Houses this Sunday 1/30 |

Mike

Please allow this email as approval & authorization to engage the services of your handy man to shovel & salt all of our units at Morris & Watkins. Thanks.

**PLEASE NOTE MY NEW DIRECT PHONE & MAILING ADDRESS BELOW**

**Michael Cosden**
**Vice President - Special Assets Manager**
**NOVA Bank**
**mcosden@novabank.com**
**Direct Phone (856) 686-9700 Ext. 2311**
**Direct Fax (866) 628-9506**

Please note my new address and contact information:



30 Elm Avenue
Woodbury Heights, NJ 08097
www.novabank.com

NOTICE: This message is intended only for the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Thank you.

**From:** Mike Mccann [mailto:mccann@mccannteam.com]
**Sent:** Friday, January 28, 2011 12:57 PM
**To:** Mike Mccann
**Subject:** Open Houses this Sunday 1/30

I just wanted to ask you, since there's an open house this Sunday, to please make sure your steps are salted and the sidewalk is shoveled, if applicable.

Thanks and have a wonderful weekend!

Mike

Mike McCann
"The Real Estate Man"
Prudential Fox & Roach
530 Walnut St, Ste 260

1

**Michael Cosden**

| | |
|---|---|
| **From:** | Michael Cosden |
| **Sent:** | Tuesday, January 25, 2011 2:55 PM |
| **To:** | 'Mike Mccann'; Barbara A. Gibbs |
| **Subject:** | RE: 148 Morris |
| **Attachments:** | 20110124152557273.pdf; image001.jpg |

Mike:

Please allow this email to serve as my authorization for you to engage the services of Alpha Builders to conduct certain specific site work on █████147 Watkins AND█████████████ (estimate attached). Agreed upon total cost is $3,200.00.

Please let me know if you need anything further and when work has commenced. Thanks for your assistance.

MVC

PLEASE NOTE MY NEW DIRECT PHONE & MAILING ADDRESS BELOW

Michael Cosden
Vice President – Special Assets Manager
NOVA Bank
mcosden@novabank.com
Direct Phone (856) 686-9700 Ext. 2311
Direct Fax (866) 628-9506

Please note my new address and contact information:



30 Elm Avenue
Woodbury Heights, NJ 08097
www.novabank.com

NOTICE: This message is intended only for the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Thank you.

**From:** Mike Mccann [mailto:mccann@mccannteam.com]
**Sent:** Monday, January 24, 2011 3:35 PM
**To:** Michael Cosden; Barbara A. Gibbs
**Subject:** 148 Morris

Please see attached for the estimates for work. Please give me the go ahead and I will make sure it gets done.

Thanks,
Mike

Mike McCann
"The Real Estate Man"

1

Prudential Fox & Roach
530 Walnut St, Ste 260
Philadelphia, PA 19106
215-627-6005 Office
215-440-8345 Direct
215-627-8106 Fax
www.mccannteam.com
www.facebook.com/McCannTeam

#13 Real Estate Team in Transactions in the USA by REAL *Trends* as featured in Wall Street Journal
#1 REALTOR By Prudential Real Estate Affiliates out of over 65,000 nationwide
#1 Real Estate Team by the Philadelphia Board of Realtors

2

**PBB 0010**

Case ID: 120302334



147 Watkins.
Paint stairwell 1st 2nd 150
Repair 2nd flr front br walls/ceiling and paint 150  $\rangle$ 300

3,200

mike McCann hired
Alpha per Barb Gibbs.

Alpha Builders
7912 Frankfor
Ave
19135

# Thomas J. Finn Associates, Inc.

Finance • Real Estate • Construction • Crisis Management
P.O. Box 5192
Deptford, New Jersey 08096-9998
(856) 228-5598 (856) 228-5901 Fax

Pocono Pines, PA 18350
(570) 646-3397

### 142 - 150 MORRIS STREETS
### PHILADELPHIA, PA

### PREPARED FOR:

### NOVA BANK
### THE STERLING BUILDING
### 1819 JOHN F. KENNEDY BLVD. SUITE 210
### PHILADELPHIA, PA 19103

PBB 0016
Case ID: 120302334

# Thomas J. Finn Associates, Inc.

**Finance • Real Estate • Construction • Crisis Management**
P.O. Box 5192
Deptford, New Jersey 08096-9998
(856) 228-5598 (856) 228-5901 Fax

Pocono Pines, PA 18350
(570) 646-3397

| | |
|---|---|
| **Project:** | 142 - 150 Morris Streets<br>Philadelphia, PA |
| **Date:** | May 17, 2010 |
| **Time:** | 2:00 PM |
| **Weather:** | 65' Cloudy |
| **Inspection:** | Status Report / Lock Changes |
| **Inspector:** | Todd H. Celli |
| **Owner:** | |
| **Lender:** | Nova Bank |

A status report and lock changes has been performed at the above property at the request of the bank.

**PBB 0017**

**BUILDING:**

This project contains 8 townhouse units with a one car garage.   Four units are located on Morris Street and four units are located on Watkins Street.

**PROPERTY:**



1



2

**147 Watkins Street:**

This unit is estimated at 98% complete.  Items needed to be addressed are:

1. Exterior light fixture and one outlet
2. Garage door needs a remote
3. Garage door needs to be sprayed with silicone or greased
4. Drywall is required in the utility room in the garage
5. Minor electrical work on the high-hats (master bedroom)
6. Minor drywall repairs
7. Minor hardwood flooring repairs at first floor entrance
8. Whirlpool tub should be checked
9. First floor closet shows signs of mold and drywall damage from water penetration
10. Window leaking on stair landing needs to be fixed
11. Second floor left window repairs are needed
12. Punch list items
13. Cleaning



PBB 0020
Case ID: 120302334

## RECOMMENDATION:

A status report  has been requested by the bank.   Four locks (deadbolts) have been re-keyed on the units that were inspected.   There are a number of issues that need to be addressed with this property.   Major concerns that should be addressed are itemized on each unit.   The mold issues in ███████████ should be addressed as soon as possible to determine the extent of damage caused by the window leaks.

4



# Exhibit B

Case ID: 120302334

# Thomas J. Finn Associates, Inc.

Finance • Real Estate • Construction • Crisis Management
P.O. Box 5192
Deptford, New Jersey 08096-9998
(856) 228-5598 (856) 228-5901 Fax

*File*
*M Deptford*

Pocono Pines, PA 18350
(570) 646-3397

## 142 - 150 MORRIS STREETS
## PHILADELPHIA, PA

## PREPARED FOR:

### NOVA BANK
### 30 ELM AVENUE
### WOODBURY HEIGHTS, NJ 08097

PBB 0043
Case ID: 120302334

# Thomas J. Finn Associates, Inc.

Finance • Real Estate • Construction • Crisis Management
P.O. Box 5192
Deptford, New Jersey 08096-9998
(856) 228-5598 (856) 228-5901 Fax

Pocono Pines, PA 18350
(570) 646-3397

Project:      142 - 150 Morris Streets
              Philadelphia, PA

Date:         July 8, 2010

Time:         12:00 PM

Weather:      90' Overcast

Inspection:   Site Visit

Inspector:    Todd H. Celli

Owner:

Lender:       Nova  Bank

A site visit has been performed at the above property at the request of
the bank.

**PBB 0044**

## BUILDING:

This project contains 8 townhouse units with a one car garage.   Four units are located on Morris Street and four units are located on Watkins Street.

## PROPERTY:



PBB 0045
Case ID: 120302334



## 147 Watkins Street: ✓

* Property was inspected and air conditioning was turned on (74˚).  A bleach /water spray was used on portions of the drywall on the first floor mold issue.



Not aNs

## RECOMMENDATION:

A site visit has been performed at the requested of the bank.

2



# Exhibit C

Case ID: 120302334

## *Alpha Builders*

7912 Frankford Avenue

Philadelphia, PA 19136
215-789-0683



DATE: JANUARY 24, 2011

**Please make check payable to:**
**Alpha Builders**

PROPERTY ADDRESS:
147 Watkins

| DESCRIPTION | AMOUNT |
|---|---|
| Paint stairwell from 1st floor to 2nd floor | 150.00 |
| Repair 2nd floor front bedroom walls/ceiling and paint | 150.00 |
| | |
| **TOTAL** | **300.00** |

Thank you for your business!

Case ID: 120302334
Case ID: 120302334

FAX-215-627-8106   Feb. 10. 2011  9:04AM                    No. 4362   P. 2

2-9-2011

# JRH CONTRACTING
## (D.B.A.)
# NOCELLA CONTRACTING
P.O. BOX 965, GLENSIDE, PA 19038

### 215-416-6756

147 WAKIN ST

TOP MAIN WHITE RUBBER ROOF. NEEDS

GUTTER MEDAL IN BACK AND FRONT.

ALSO NEEDS TO BE REPAIRED WITH

CEMENT AND RAG. FRONT LOWER

HAS DECK ON IT. CAN NOT SEE.

TOTAL COST $2.00.00

Thank you.

Case ID: 120302334
Case ID: 120302334




**Maid By Request**

310 Streett Circle
Forest Hill, MD 21050

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/3/2011 | 112 |

**Bill To**

Mike McCann
McCann Team/Prudential Fox & Roach
530 Walnut Street, Ste. 260
Philadelphia, PA 19106

| Date Of Service | Terms |
|-----------------|-------|
| 3/05/2011 | Due on receipt |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Standard cleaning, up to 2,500 sq. ft.<br><br>Service Address:<br>147 Watkins Street<br>Philadelphia, PA 19148<br><br>Send check to:<br>Maid By Request LLC<br>310 Streett Circle<br>Forest Hill, MD 21050 | 205.00 | 205.00 |

| Phone # | Fax # | E-mail | Web Site | **Total** | **$205.00** |
|---------|-------|--------|----------|-----------|-------------|
| 215-552-8170 | 410-638-6842 | info@maidbyrequest.com | www.maidbyrequest.com | | |

Case ID: 120302334
Case ID: 120302334



# Exhibit B

Case ID: 120302334

# Thomas J. Finn Associates, Inc.

Finance • Real Estate • Construction • Crisis Management
P.O. Box 5192
Deptford, New Jersey 08096-9998
(856) 228-5598 (856) 228-5901 Fax

*File in Dayley*

Pocono Pines, PA 18350
(570) 646-3397

## 142 - 150 MORRIS STREETS
## PHILADELPHIA, PA

## PREPARED FOR:

**NOVA BANK**
**30 ELM AVENUE**
**WOODBURY HEIGHTS, NJ 08097**

PBB  0043
Case ID: 120302334

# Thomas J. Finn Associates, Inc.

Finance • Real Estate • Construction • Crisis Management
P.O. Box 5192
Deptford, New Jersey 08096-9998
(856) 228-5598 (856) 228-5901 Fax

Pocono Pines, PA 18350
(570) 646-3397

| | |
|---|---|
| Project: | 142 – 150 Morris Streets<br>Philadelphia, PA |
| Date: | July 8, 2010 |
| Time: | 12:00 PM |
| Weather: | 90' Overcast |
| Inspection: | Site Visit |
| Inspector: | Todd H. Celli |
| Owner: | |
| Lender: | Nova Bank |

A site visit has been performed at the above property at the request of the bank.

PBB 0044

## BUILDING:

This project contains 8 townhouse units with a one car garage.   Four units are located on Morris Street and four units are located on Watkins Street.

## PROPERTY:



PBB 0045
Case ID: 120302334



### 147 Watkins Street:

\* Property was inspected and air conditioning was turned on (74˚).  A bleach /water spray was used on portions of the drywall on the first floor mold issue.



Not ans

### RECOMMENDATION:

A site visit has been performed at the requested of the bank.

PBB 0046
Case ID: 120302334



# Exhibit D

From:                                   03/08/2011 07:30   #608 P.002/006

## STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE            ASR
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

### PARTIES

| BUYER(S): Debra A Adrian | SELLER(S): PBB Property Holding LLC |
|---|---|
| BUYER'S MAILING ADDRESS:<br>15 Center Rd.<br>Westmont, NJ 08108 | SELLER'S MAILING ADDRESS: |

### PROPERTY

PROPERTY ADDRESS      147    Watkins Street

in the municipality of _____ Philadelphia _____ ZIP _____ 19148 _____
in the School District of _____, County of _____, in the Commonwealth of Pennsylvania.
Identification (e.g., Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____

### BUYER'S RELATIONSHIP WITH PA LICENSED BROKER
☐ No Business Relationship (Buyer is not represented by a broker)

| Broker (Company)    Coldwell Banker Preferred | Licensee(s) (Name)    Carmel Archdekin |
|---|---|
| Company Address  223-225 Market Street<br>Philadelphia    PA    19106<br>Company Phone    (215) 923-7600<br>Company Fax    (215) 923-0500<br>Broker is:<br>☒ Buyer Agent (Broker represents Buyer only)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) | Direct Phone(s)    215.680.5998<br>Cell Phone(s)    215.680.5998<br>Fax    215.940.8207<br>Email    carmel@cbpref.com<br>Licensee(s) is:<br>☒ Buyer Agent with Designated Agency<br>☐ Buyer Agent without Designated Agency<br>☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

### SELLER'S RELATIONSHIP WITH PA LICENSED BROKER
☐ No Business Relationship (Seller is not represented by a broker)

| Broker (Company)    Prudential Fox & Roach | Licensee(s) (Name)    Michael McCann |
|---|---|
| Company Address 530 Walnut Street<br>Philadelphia    PA    19106<br>Company Phone    215.627.6005<br>Company Fax    215.627.3142<br>Broker is:<br>☒ Seller Agent (Broker represents Seller only)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) | Direct Phone(s)    215.440.8345<br>Cell Phone(s)<br>Fax    215.627.8105<br>Email    mccann@mccannteam.com<br>Licensee(s) is:<br>☒ Seller Agent with Designated Agency<br>☐ Seller Agent without Designated Agency<br>☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

### DUAL AND/OR DESIGNATED AGENCY
A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: _____                    ASR Page 1 of 11                         Seller Initials: _____
                                            Revised 1/10
Pennsylvania Association of REALTORS          COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2010
                                                                                          1/10

Case ID: 120302334

From:                                          03/08/2011 07:31    #608 P.003/006

1. **By this Agreement,** dated _____ 3/6/2011 _____
   Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.
2. **PURCHASE PRICE AND DEPOSITS (1-10)**
   (A) Purchase Price $    $360,000.00
   (                    Three Hundred Sixty Thousand                    U.S. Dollars), to be paid by Buyer as follows:
   1. Deposit at signing of this Agreement:                                        $
   2. Deposit within  20  days of the Execution Date of this Agreement:            $          1,000.00
   3.                                                                               $          9,000.00
   4. Remaining balance will be paid at settlement.                                $
   (B) All funds  paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer
   within 30 DAYS of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-
   sonal check.
   (C) Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller
   (unless otherwise stated here:                                                                                                    ),
   who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or ter-
   mination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of
   the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this
   Agreement.
3. **SELLER ASSIST (If Applicable) (1-10)**
   Seller will pay $         20,000.00         or                % of Purchase Price (0 if not specified) toward
   Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is
   approved by mortgage lender.
4. **SETTLEMENT AND POSSESSION (1-10)**
   (A) Settlement Date is                   May 31, 2011
   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
   Buyer and Seller agree otherwise.                                             , or before if Buyer and Seller agree.
   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
   current taxes (see Notice Regarding Real Estate Taxes); rents; interest on mortgage assumptions; condominium fees and home-
   owner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be pro-
   rated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days follow-
   ing settlement, unless otherwise stated here:
   (D) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here:
   (E) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here:
   (F) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
   broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property
   is subject to a lease.
   (G) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
   assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller
   will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will
   acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
   ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached.
5. **DATES/TIME IS OF THE ESSENCE (1-10)**
   (A) Written acceptance of all parties will be on or before:                    03/08/11
   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
   essence and are binding.
   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by sign-
   ing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding
   the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be ini-
   tialed and dated.
   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
   ment of the parties.
   (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
   and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
   to all parties.
6. **ZONING (1-10)**
   Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdi-
   vidable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
   voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
   Zoning Classification

Buyer Initials: _____/_____                ASR Page 2 of 11                Seller Initials: _____/_____
                                                 Revised 1/10

From:

03/08/2011 07:31    #606 P.004/006

**7. FIXTURES AND PERSONAL PROPERTY (1-10)**

(A) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, and other items including plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pool and spa equipment (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; imported shrubbery, plantings and trees; any remaining heating and cooking fuels stored on the Property at the time of settlement; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven, unless otherwise stated; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Also included: _____

_____All Appliances_____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(C) EXCLUDED fixtures and items: _____

**8. MORTGAGE CONTINGENCY (1-10)**

☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

☒ ELECTED.

(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $          360,000.00 | Loan Amount $ |
| Minimum Term          30          years | Minimum Term                    years |
| Type of mortgage          VA | Type of mortgage |
| Loan-To-Value (LTV) ratio: | Loan-To-Value (LTV) ratio: |
| For non-FHA/VA loans LTV ratio not to exceed          103          % | For non-FHA/VA loans LTV ratio not to exceed                    % |
| Mortgage lender          USAA | Mortgage lender |
| | |
| Interest rate     4.5     %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of     5.0     %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed                    % (0% if not specified) of the mortgage loan. | Interest rate               %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of                    %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed                    % (0% if not specified) of the mortgage loan. |

(B) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender's gives Buyer the right to lock in the interest rate(s), Buyer will do so at least     15     days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to the Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.

(C) Within          days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed, written mortgage application (including payment for and ordering of appraisal and credit reports without delay, at the time required by lender(s)) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), or otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.

(D) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including delay of the appraisal), fails to lock in interest rate(s) as stated in Paragraph 8(B), or otherwise causes the lender to reject, refuse to approve or issue a mortgage loan commitment.

(E) 1. Mortgage Commitment Date:          May 1, 2011          . Upon receiving a mortgage commitment, Buyer will promptly deliver a copy of the commitment to Seller.

2. If Seller does not receive a copy of the mortgage commitment(s) by the Mortgage Commitment Date, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers a mortgage commitment to Seller. Until Seller terminates this Agreement, Buyer is obligated to make a good-faith effort to obtain mortgage financing.

3. Seller may terminate this Agreement by written notice to Buyer after the Mortgage Commitment Date if the mortgage commitment:
   a. Does not satisfy the terms of Paragraph 8(A), OR
   b. Contains any condition not specified in this Agreement (e.g., the Buyer must settle on another property, an appraisal must be received by the lender, or the mortgage commitment is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within     7     DAYS after the Mortgage Commitment Date in Paragraph 8(E)(1), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

4. If this Agreement is terminated pursuant to Paragraphs 8(E)(2) or (3), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 22 and this Agreement will be VOID, Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

Buyer Initials: _____ / _____                                         ASR Page 3 of 11                                         Seller Initials: _____ / _____

From:                                        03/08/2011 07:33    #608 P.005/008

(F) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within ___5___ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.

   1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insuror, Buyer accepts the Property and agrees to the RELEASE in Paragraph 24 of this Agreement.

   2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within ___5___ DAYS, notify Seller of Buyer's choice to:

      a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld, OR

      b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement.

   If Buyer fails to respond within the time stated in Paragraph 8(F)(2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 24 of this Agreement.

**FHA/VA, IF APPLICABLE**

(G) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $___360,000.00___ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

   Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of . . . influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

(H) U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement
   ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.

(I) Certification   We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement.

**9.  SELLER REPRESENTATIONS (1–10)**

(A) Radon Testing and Remediation (See Notice Regarding Radon)
   Seller has no knowledge about the presence or absence of radon unless checked below:
   ☐ 1. Seller has knowledge that the Property was tested on the dates and by the methods (e.g. charcoal canister, alpha track, etc.), which produced the results indicated below:

     Date     Type of Test     Results (picoCuries/liter or working levels)     Name of Testing Service

   ☐ 2. Seller has knowledge that the Property had radon removal system(s) installed as indicated below:
     Date Installed     Type of System     Provider

   Copies of all available test reports will be delivered to Buyer with this Agreement. Seller does not warrant the results or the results of radon tests.

(B) Status of Water
   Seller represents that the Property is served by:
   ☒ Public Water  ☐ Community Water  ☐ On-site Water  ☐ None  ☐

(C) Status of Sewer
   Seller represents that the Property is served by:
   ☒ Public Sewer  ☐ Community Sewage Disposal System  ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
   ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)  ☐ Holding Tank (see Sewage Notice 3)
   ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
   ☐ None (see Sewage Notice 1) ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
   ☐

(D) Historic Preservation
   Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____

Buyer Initials: _____       ASR Page 4 of 11       Seller Initials: _____
              Revised 3/10

Case ID: 120302334

(E) ☐ Property, or a portion of it, is preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions):
  ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
  ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
  ☐ Agricultural Area Security Law (Act 43 of 1981; 3 P.S. §901 et seq.)
  ☐ Other

(F) Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here:

(G) Seller knows of no other potential notices (including violations) and/or assessments except as follows:

(H) Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

## 10. WAIVER OF CONTINGENCIES (9-05)

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 24 of this Agreement.

## 11. INSPECTIONS (1-10) (See Notices Regarding Property and Environmental Inspections)

(A) Rights and Responsibilities
  1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors. All parties and their real estate licensee(s) may attend any inspections.
  2. Buyer may make a pre-settlement walk-through inspection of the Property. Buyer's right to this inspection is not waived by any other provision of this Agreement.
  3. Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.
  4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
  5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared.

(B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "inspection" or "inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Notice Regarding the Home Inspection Law)

(C) For elected inspection(s), Buyer will, within the Contingency Period(s) stated in Paragraph 12(A), complete inspections, obtain any inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a Written Corrective Proposal(s) to Seller, according to the terms of Paragraph 12(B).

**Home/Property Inspections and Environmental Hazards (mold, etc.)**

Elected ___ Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior    Waived ___
doors; exterior siding, Exterior Insulation and Finish Systems, fascia, gutters and downspouts; swimming pools, hot
tubs and spas; appliances; electrical systems; interior and exterior plumbing; public sewer systems; heating and cool-
ing systems; water penetration; electromagnetic fields; wetlands and flood plain delineation; structure square
footage; mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks,
etc.); and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in
the Home Inspection Law, the home inspection must be performed by a full member in good standing of a national
home inspection association, or a person supervised by a full member of a national home inspection association, in
accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed
or registered engineer or architect. (See Notice Regarding the Home Inspection Law)

**Wood Infestation**

Elected ___ Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as    Waived ___
a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provid-
ed by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort-
gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The inspection is to be
limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the inspection
reveals active infestation(s), Buyer, at Buyer's Expense, may obtain a Proposal from a wood-destroying pests pes-
ticide applicator to treat the Property. If the inspection reveals damage from active or previous infestation(s), Buyer
may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to
structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

**Radon**

Elected ___ Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection    Waived ___
Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02
working levels or 4 picoCuries/liter (4pCi/L).

**Water Service**

Elected ___ Buyer may obtain an inspection of the quality and quantity of the water system from a properly licensed or otherwise    Waived ___
qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous con-
dition, at Seller's expense, prior to settlement.

Buyer Initials: _____ / _____

Seller Initials: _____ / _____

This contract is for use by Coldwell Banker Preferred. Use by any other party is illegal and voids the contract.

Case ID: 120302334

262 On-lot Sewage (If Applicable)
263  Elected  Buyer may obtain an inspection of the individual on-lot sewage disposal system from a qualified, professional  Waived
264  /  inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to,
265  and empty the individual on-lot sewage disposal system. Seller will restore the Property to its previous condition,
266  at Seller's expense, prior to settlement. See paragraph 12(C) for more information regarding the Individual On-lot
267  Sewage Inspection Contingency.
268  Property Insurance
269  Elected  Buyer may determine the insurability of the Property by making application for property and casualty insurance for  Waived
270  the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with  /
271  the insurer to assist in the insurance process. If the Property is located in a flood plain, Buyer may be required to
272  carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to Settlement Date.
273  Property Boundaries
274  Elected  Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal  Waived
275  /  description, certainty and location of boundaries and/or quantum of land. Most Sellers have not had the Property
276  surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural
277  or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen-
278  tations of size of property are approximations only and may be inaccurate.
279  Deeds, Restrictions and Zoning
280  Elected  Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi-  Waived
281  /  nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the  /
282  Property (such as in-law quarters, apartments, home office, day care) is permitted and may elect to make the
283  Agreement contingent upon an anticipated use. Present use: _____
284  Lead-Based Paint Hazards (For Properties prior to 1978 only)
285  Elected  Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a  Waived
286  /  risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint haz-
287  ards unless Buyer waives that right. Regardless of whether this inspection is elected or waived, the Residential
288  Lead-Based Paint Hazard Reduction Act requires a Seller of property built prior to 1978 to provide the
289  Buyer with an EPA-approved lead hazards information pamphlet titled Protect Your Family from Lead in
290  Your Home, along with a separate form, attached to this Agreement, disclosing Seller's knowledge of lead-
291  based paint hazards and any lead-based paint records regarding the Property. (See Notices Regarding
292  Residential Lead-Based Paint Hazard Reduction Act)
293  Other
294  Elected  _____  Waived
295  /  _____  /
296  _____
297  The inspections elected above do not apply to the following existing conditions and/or items: _____
298  _____
299  _____

300 **12. INSPECTION CONTINGENCY (1-10)**
301  (A) The Contingency Period is _12_ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elect-
302  ed in Paragraph 11(C), except the following:
303  Inspection(s)
304  _____
305  _____  Contingency Period
306  _____  _____ days
307  _____  _____ days
308  _____  _____ days
309  _____  _____ days
310  (B) Except as stated in Paragraph 12(C), if the result of any Inspection elected in Paragraph 11(C) is unsatisfactory to Buyer, Buyer
311  will, within the stated Contingency Period:
312  1.  Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 24 of this Agreement, OR
313  2.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
314  Paragraph 22 of this Agreement, OR
315  3.  Present the Report(s) to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.
316  The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the cor-
317  rections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the correc-
318  tions. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental
319  requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
320  a.  No later than _____ days (5 if not specified) from the end of the Contingency Period(s), Seller will inform Buyer in writ-
321  ing that Seller will:
322  (1) Satisfy all the terms of Buyer's Proposal(s), OR
323  (2) Not satisfy all the terms of Buyer's Proposal(s), OR
324  b.  If Seller agrees to satisfy the terms of Buyer's Proposal, Buyer accepts the Property and agrees to the RELEASE in
325  Paragraph 24 of this Agreement.
326  c.  Within _____ days (2 if not specified) of the receipt of written notification that Seller will not satisfy all terms of Buyer's
327  Proposal, or the time stated in paragraph 12(B)(3)(a) if Seller fails to choose either option in writing, whichever occurs
328  first, Buyer will:

Buyer Initials: _____                 ASR Page 6 of 11                 Seller Initials: _____
                                              Revised 3/10
This contract is for use by Coldwell Banker Preferred. Use by any other party is illegal and voids the contract.

Case ID: 120302334

(1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 24 of this Agreement, OR

(2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement, OR

(3) Enter into a mutually acceptable written agreement with Seller, providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.

If Buyer fails to respond within the time stated in Paragraph 12(B)(3)(c) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 24 of this Agreement.

(C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within _5_ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the stated time, Buyer will notify Seller in writing of Buyer's choice to:

1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 24 of this Agreement, OR

2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement, OR

3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 24 of this Agreement. If required by any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within _5_ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement.

If Buyer fails to respond within the time stated in Paragraph 12(C) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 24 of this Agreement.

13. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (1-10)

(A) In the event any notices, including violations, and/or assessments are received after Seller has signed this Agreement and before settlement, Seller will within _5_ DAYS of receiving the notices and/or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:

1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 24 of this Agreement, OR

2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within _5_ DAYS that Buyer will:

a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in Paragraph 24 of this Agreement, OR

b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement.

If Buyer fails to respond within the time stated in Paragraph 13(A)(2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 24 of this Agreement.

(B) If required by law, within _30_ DAYS from the Execution Date of this Agreement, but in no case later than _15_ DAYS prior to Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.

1. Within _5_ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy of the notice to Buyer and notify Buyer in writing that Seller will:

a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 24 of this Agreement, OR

b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will notify Seller in writing within _5_ DAYS that Buyer will:

(1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld, OR

(2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement.

If Buyer fails to respond within the time stated in Paragraph 13(B)(1)(b) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 24 of this Agreement, and Buyer accepts the responsibility to perform the repairs/improvements required by the municipality.

2. If Seller denies Buyer permission to make the required repairs/improvements, or does not provide Buyer access before Settlement Date to make the required repairs/improvements, Buyer may, within _5_ DAYS, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement.

3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller will perform all repairs/improvements as required by the notice at Seller's expense. Paragraph 13(B)(3) will survive settlement.

Buyer Initials: _____   ASR Page 7 of 11   Seller Initials: _____
Revised 1/10
This contract is for use by Coldwell Banker Preferred. Use by any other party is illegal and voids the contract.

Case ID: 120302334

**14. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) RESALE NOTICE (1-10)**

Property is NOT a Condominium or part of a Planned Community unless checked below.

☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of the Uniform Condominium Act of Pennsylvania (see Notice Regarding Condominiums and Planned Communities) requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the Uniform Planned Community Act (see Notice Regarding Condominiums and Planned Communities). Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the Declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in section 5407(a) of the Act.

THE FOLLOWING APPLIES TO PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY.

(A) Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Buyer to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.

(B) Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the association in the Certificate.

(C) The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 22 of this Agreement.

(D) If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

**15. TITLES, SURVEYS AND COSTS (1-10)**

(A) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.

(B) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

(C) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(D) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 15(A), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 15(B) items (1), (2), (3) and in Paragraph 15(C).

(E) Seller is not aware of the status of oil, gas and mineral rights for Property unless otherwise stated below:

   ☐ Seller does not own all subsurface rights to the property.
   ☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached.

(F) COAL NOTICE (Where Applicable)

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

(G) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here (see Notice Regarding Recreational Cabins).

**16. MAINTENANCE AND RISK OF LOSS (1-10)**

(A) Seller will maintain the Property, grounds, fixtures and personal property specifically listed in this Agreement in its present condition, normal wear and tear excepted.

(B) If any system or appliance included in the sale of Property fails before settlement, Seller will:
   1. Repair or replace the failed system or appliance before settlement, OR
   2. Provide prompt written notice to Buyer of Seller's decision to:
      a. Credit Buyer at settlement for the fair market value of the failed system or appliance, as acceptable to the mortgage lender, if any, OR
      b. Not repair or replace the failed system or appliance, and not credit Buyer at settlement for the fair market value of the failed system or appliance.

Buyer Initials: _____    ASR Page 8 of 11    Seller Initials: _____
Revised 1/10

This contract is for use by Coldwell Banker Preferred. Use by any other party is illegal and voids the contract.

Case ID: 120302334

3. If Seller does not repair or replace the failed system or appliance or agree to credit Buyer for its fair market value, or if Seller fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within **5** DAYS or before Settlement Date, whichever is earlier, that Buyer will:

   a. Accept the Property and agree to the RELEASE in Paragraph 24 of this Agreement, OR

   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement.

   If Buyer fails to respond within the time stated in Paragraph 16(B)(3) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 24 of this Agreement.

(C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced prior to settlement, Buyer will:

   1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR

   2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 22 of this Agreement.

**17. HOME WARRANTIES (1-10)**

At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

**18. RECORDING (9-05)**

This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

**19. ASSIGNMENT (1-10)**

This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

**20. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**

(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

**21. REPRESENTATIONS (1-10)**

(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) Any repairs required by this Agreement will be completed in a workmanlike manner.

(D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

**22. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-10)**

(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 22(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

   1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

   2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.

   3. According to the terms of a final order of court.

   4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 22(C))

Buyer Initials: _____     ASR Page 9 of 11     Seller Initials: _____
Revised 1/10

This contract is for use by Coldwell Banker Preferred. Use by any other party is illegal and voids the contract.

Case ID: 120302334



(C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____365_____ days after the Settlement Date stated in Paragraph 4(A), or any written extensions thereof, the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation. If Broker has received verifiable written notice of litigation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

(D) Buyer and Seller agree that Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 22 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
   1. Fail to make any additional payments as specified in Paragraph 2, OR
   2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
   3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) Unless otherwise checked in Paragraph 22(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
   1. On account of purchase price, OR
   2. As monies to be applied to Seller's damages, OR
   3. As liquidated damages for such default.

(G) ☒ SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 22(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

(I) Brokers and licensees are not responsible for unpaid deposits.

23. MEDIATION (1-10)
Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of REALTORS®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding (see Notice Regarding Mediation). Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

24. RELEASE (9-05)
Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

25. REAL ESTATE RECOVERY FUND (9-05)
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

26. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)
Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant to Paragraph 14. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

27. SPECIAL CLAUSES (1-10)
(A) The following are part of this Agreement if checked:
   ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
   ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSP-CM)
   ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
   ☐ Short Sale Addendum to Agreement of Sale (PAR Form SHS)
   ☐ Appraisal Contingency Addendum (PAR Form ACA)
   ☒ Proof of Tax Abatement
   ☐
   ☐

Buyer Initials _____                ASR Page 10 of 11                Seller Initials _____
                                          Revised 1/10
This Contract is for use by Coldwell Banker Preferred. Use by any other party is illegal and voids the contract.

Re: 147 Watkins Street, Phila, Pa.
#01-1-1178-50

**(B) Additional Terms:**

— And subject to attached Addendum
to Sales Agreement dated 3·8·2011

*Do*

— Buyers obligation to purchase the property is contingent upon
Buyers receiving written notice from the Federal Government
that the right of redemption has been waived. *Do / R*
*3·11·11*

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties.

_____ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

_____ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

_____ Buyer has read and understands the notices and explanatory information in this Agreement.

_____ Buyer has received a Seller's Property Disclosure Statement before signing this Agreement, if required by law (see Information Regarding the Real Estate Seller Disclosure Law).

_____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

_____ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale, and the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

WITNESS_____  BUYER *Debra A Adams*   DATE 3-6-11
                                         Debra A Adams

WITNESS_____  BUYER_____  DATE_____

WITNESS_____  BUYER_____  DATE_____

Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.

Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

Seller has read and understands the notices and explanatory information in this Agreement.

WITNESS_____  SELLER_____  DATE 3·8·2011

WITNESS_____  SELLER *Michael Corder, President*  DATE_____

WITNESS_____  SELLER_____  DATE_____

Buyer Initials_____            ASR Page 11 of 11        Seller Initials_____
                                 Revised 1/10
This contract is for use by Coldwell Banker Preferred. Use by any other party is illegal and voids the contract.

Case ID: 120302334

ADDENDUM TO SALES AGREEMENT

**Property:**  147 Watkins Street, Philadelphia, PA TAX ID# 01-1-1178-30

**Seller:**  PBB Property Holdings LLC

**Buyer:**  Debra A. Adrian

PARAGRAPH 27 (B) Additional Terms:

The sale is subject to the one year right of redemption of the United States of America. The right of redemption arose in connection with a restitution lien which the United States of America had against the prior owner, Donald Dougherty, which lien was discharged by the Sheriff's sale pursuant to which the Bank acquired title to the property. The one year right of redemption runs from the date of the Sheriff's sale.

Agreed to and Accepted by:

SELLER:   PBB PROPERTY HOLDINGS LLC

Seller _____   Date: 3-8-2011

Name: Michael Cosden

Title:  President

BUYER:   DEBRA A. ADRIAN

Buyer _____   Date: 3/11/11

Name: Debra A. Adrain

1



# Exhibit E

**VISUAL INSPECTION**
**AGREEMENT**

**PLEASE READ THIS AGREEMENT CAREFULLY**
THIS AGREEMENT SUPERCEDES ALL PREVIOUS COMMUNICATIONS

Property: 147 Watkins Street, Philadelphia, PA. 19148

Client: Deborah Adrian

Address: 16 Center St, Westmont, NJ 08108    Phone:

| | | |
|---|---|---|
| Real Estate Co. Coldwell Banker Preferred | Agent: | Carmel Archdekin |
| Fee: $600 | Paid By: | Deborah Adrian |
| Tax: | Date Paid: | 3/16/2011 |
| Total: $600 | Payment Method: | Check |

THIS AGREEMENT, made and entered into on this 16th day of March, 2011, by and between the above named Client and the undersigned, an independently owned and operated Franchisee of Pillar To Post Inc., hereafter referred to as "Inspector". Inspector will conduct a visual inspection of the Property only. The inspection is performed in accordance with the Standards of Practice of the American Society of Home Inspectors (ASHI®) and in accordance with any State or Provincial specific standards. This is not a Building Code inspection, title examination, nor a By-law compliance inspection. The Inspector does not offer an opinion as to the advisability or inadvisability of the purchase of the property; its value or its potential use. The inspection fee is based on a single visit to the property; additional fees may be charged for any subsequent visits required by the Client. If the Inspector is called upon to prepare for litigation or give testimony as a result of the inspection, additional fees shall be charged at the Inspector's then current hourly rate for any time spent, including, but not limited to, research, consultation, additional inspection time, preparation of reports, travel, time waiting to testify, and court appearances.

The Client will receive a written report of Inspector's observations of the accessible features of the Property. Subject to the terms and conditions stated herein, the inspection includes the visual examination of the home's exterior including roof and chimney, structure, electrical, heating and cooling systems, insulation, plumbing; and interior including floors, walls, ceiling and windows; it is a reasonable effort to disclose the condition of the house based on a visual inspection. Additionally, Inspector will functionally operate major built-in appliances. Conditions beyond the scope of the inspection will not be identified. No engineering services are offered.

This Inspection Report is based on the condition of the Property existing and apparent as of the time and date of the inspection. Not all conditions may be apparent on the inspection date due to weather conditions, inoperable systems, inaccessibility of areas of the Property, etc. Without dismantling the house or its systems, there are limitations to the inspection. Throughout any inspection, inferences are drawn which cannot be confirmed by direct observation. Clues and symptoms often do not reveal the extent or severity of problems. Therefore, the inspection and subsequent Inspection Report may help reduce the risk of purchasing the property; however, an inspection does not eliminate such risk nor does the Inspector assume such risk. While some of the less important deficiencies are addressed, an all inclusive list of minor building flaws is not provided. Inspector is not responsible nor liable for the non-discovery of any patent or latent defects in materials, workmanship, or other conditions of the Property, or any other problems which may occur or may become evident after the inspection time and date. Inspector is not an insurer nor guarantor against defects in the building and improvements, systems or components inspected. Inspector makes no warranty, express or implied, as to the fitness for use or condition of the systems or components inspected. Inspector assumes no responsibility for the cost of repairing or replacing any unreported defects or conditions, nor is Inspector responsible or liable for any future failures or repairs.

Inspector and its employees are limited in liability to the fee paid for the inspection services and report in the event that Client or any third party claims that Inspector is in any way liable for negligently performing the inspection or in preparing the Inspection Report, or for any other reason or claim that Inspector has not fully satisfied all its obligations hereunder. Client hereby agrees to indemnify, defend and hold harmless Inspector and Pillar To Post Inc. if any third party brings a claim against Inspector or Pillar To Post Inc. relating to the inspection or Inspection Report.

Inspections are done in accordance with ASHI® Standards, are visual, and are not technically exhaustive. The following items are specifically excluded from the inspection: water softening systems, security systems, telephone and cable TV cables, timing systems, swimming pools and spas, underground or concealed pipes, sewer lines, septic systems, electrical lines and circuits, central vacuum systems, central air conditioning when outside temperature is below 60° F or 15° C, and any other condition, item, system or component which by the nature of their location are concealed or otherwise difficult to inspect or which the Inspector cannot visually examine. Excluded is the assurance of a dry basement or crawl space; also excluded is the assurance that double and triple pane glazing seals in windows are intact. Inspector will not dismantle any component or system; full evaluation of the integrity of a heat exchanger requires dismantling of the furnace and is beyond the scope of ...

©1994-2001 Pillar To Post Inc. (N02301)
EACH OFFICE IS INDEPENDENTLY OWNED AND OPERATED

Case ID: 120302334

visual inspection; Inspector will not conduct geological tests; will not inspect inaccessible or concealed areas of the Property; will not enter dangerous areas of the Property; will not inspect for environmental concerns such as hazardous substances or gasses, including but not limited to, radon gas, asbestos, formaldehyde; or for pests such as wood destroying organisms, insects, or rodents; or for fungus. Inspector examines a representative sample of components that are identical and numerous, such as electrical outlets, bricks, shingles, windows, etc., and does not examine every single one of these identical items, therefore, some detectable deficiencies may go unreported.

The inspection excludes defects such as cracking, leaking, surface discoloration's, or landslides resulting from hidden defects, including but not limited to, water leaks, land subsidence, or other geological problems. The inspection also excludes merely cosmetic features, including but not limited to, paint, wall coverings, carpeting, floorings, paneling, lawn, and shrubs. The Inspector is not required to determine property boundary lines or encroachments.

Any controversy or claim between the parties hereto, arising directly or indirectly out of, connected with, or relating to the interpretation of this Agreement, the scope of the services rendered by Inspector, the Inspection Report provided to the Client by Inspector, or as in any other matter involving any act or omission performed under this Agreement, or promises, representations or negotiations concerning duties of the Inspector hereunder, shall be submitted to arbitration in accordance with the applicable rules of the Construction Arbitration Services Inc., or the Canadian Association of Arbitrators, as the case may be. The parties shall mutually appoint an arbitrator who is knowledgeable and familiar with the professional home inspection industry. Judgement on any award may be entered in any court having jurisdiction, and the arbitration decision shall be binding on all parties. Secondary or consequential damages are specifically excluded. In the event that any dispute arises out of the Inspection or Report, and proceedings are commenced by the Client, if the Client is unsuccessful in maintaining the claim, then the Client shall be liable to the Inspector for all charges, expenses, costs and legal fees (on a lawyer and client basis) incurred by the Inspector on a complete indemnity basis, including a reasonable fee for all the time spent by the Inspector or Inspector's personnel in investigating, research, preparation for, and attendance at court hearings and examinations.

Client guarantees Inspector a right to examine the subject matter and area of any claim and offer a resolution prior to Client's performance of remedial measures (except in the event of an emergency, or to protect for personal safety, or to reduce or avoid damage to property). This is a condition precedent to Client's claim.

This Agreement and the documents referred to herein constitute the entire Agreement between the parties hereto, and supersedes any and all prior representations, discussions, or agreements, whether written or oral. No amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to, in writing, and signed by the parties hereto. If any provision of this Agreement is held invalid or unenforceable by any court of final jurisdiction, it is the intent of the parties that all other provisions of this Agreement be construed to remain fully valid, enforceable, and binding on the parties.

**THE INSPECTION REPORT DOES NOT CONSTITUTE A WARRANTY, GUARANTEE OR INSURANCE POLICY OF ANY KIND. THERE ARE NO WARRANTIES MADE AGAINST ROOF LEAKS, WET BASEMENTS, OR MECHANICAL BREAKDOWNS. THE REPORT IS A PROFESSIONAL OPINION BASED ON A VISUAL INSPECTION OF THE ACCESSIBLE AREAS AND FEATURES OF THE PROPERTY AS OF THE DATE AND TIME OF THE INSPECTION AND IS NOT A LISTING OF REPAIRS TO BE MADE. THE REPORT IS NOT AN ASSESSMENT NOR IS IT AN APPRAISAL. NEITHER THE INSPECTOR NOR PILLAR TO POST INC. IS ASSOCIATED WITH ANY SELLER, BUYER, CONTRACTOR, LAWYER OR REALTOR. OTHER THAN THE INSPECTION FEE, INSPECTOR HAS NO FINANCIAL INTEREST IN THE PROPERTY.**

**THE INSPECTION PROCESS IS A TWO PART SYSTEM: THE VERBAL SURVEY AND THE REPORT. AS SUCH, THIS REPORT IS NOT TRANSFERABLE TO THIRD PARTIES AS IT WILL NOT CLEARLY CONVEY THE INFORMATION HEREIN. THIS REPORT IS PREPARED BY INSPECTOR AT YOUR REQUEST, ON YOUR BEHALF, AND FOR YOUR USE AND BENEFIT ONLY; THIS REPORT AND ANY MEMORANDA OR INFORMATION PROVIDED TO YOU PURSUANT TO THIS INSPECTION AGREEMENT ARE NOT TO BE USED, IN WHOLE OR IN PART, OR RELEASED TO ANY OTHER PERSON WITHOUT INSPECTOR'S PRIOR WRITTEN PERMISSION.**

By initialing here (_____), you authorize us to distribute copies of the Report to the real estate agents directly involved in this transaction, who are not designated beneficiaries of the Report, intended or otherwise.

---

I hereby authorize the inspection of this Property having read and understood this Agreement:

Signature of Client or Client's Representative

---

FRANCHISEE

By:

Time of Inspection: _____

Spoke with Vendor:   [ ] Yes   [ ] No

©1994-2001 Pillar To Post Inc. (N02301)
EACH OFFICE IS INDEPENDENTLY OWNED AND OPERATED

Case ID: 120302334



**Pillar To post**

THE HOME OF HOME INSPECTION®   Date: 16-Mar-2011

**Inspection No. 21774-4238**

## Visual Property Inspection

**147 Watkins Street**
**Philadelphia, PA 19148**

### Prepared for :

**Debra Adrian**
**16 Center Street**
**West Mount , NJ 08108**



### Inspected by :

**Chris Haslip**
**8001 Roosevelt Blvd #400**
**Philadelphia, Pennsylvania 19152**
**Phone: (215) 624-3990 Fax: (215) 624-3991 Email:**
**scott.rawlings@pillartopost.com**

21774-4238

Case ID: 120302334



**Pillar To Post**

THE HOME OF HOME INSPECTION®   Date: 16-Mar-2011      147 Watkins Street, Philadelphia, PA 19148

# Property and Site

## Please read!

This is a ASHI performance based visual inspection. The inspection was performed, conforming to PA, State law act 114.   The inspection report covers the condition the property at the time of the inspection. As things could change, re-check the condition during the walk through.

This is a two part inspection report. Be sure to read the entire report to fully understand the condition of the property. The red bold comments are major material defect items or safety issues that should be evaluated by qualified contractors and are itemized at the end of the report on the summery page. (Report Commentary)  All limitations including concealed area's listed here within should have further investigation to determine the current conditions if necessary.  All receipts, permits, and necessary documentation should be obtained prior to settlement.  Consumer information and a list of some minor material defect repairs are noted with in the body of the report.

Cost estimates for the major repairs are approximate and given as a guideline only*. The cost estimates are a range from the national average as the high range, and the local average as the low range. Obtain estimates from at least three licensed and experienced contractors prior to settlement.

### Conditions
| | | | | |
|---|---|---|---|---|
| [✓]Clear | [ ]Cloudy | [ ]Rain | [ ]Wet | [ ]Snow covered |

Approx. Temperature 50+           Approx. Hydrant Distance 90+

### Building
| | | | | | |
|---|---|---|---|---|---|
| [ ]Condo | [ ]Rural | [ ]Bungalow | [ ]Bi-Level | [ ]2 Story | [ ]3 Story |
| [ ]Semi-Detached | [ ]Duplex | [✓]Row House | [ ]Other | [ ]Ranch | |
| [ ]Single family house | | [✓]4 story | | | |

### Driveway
| | | | | |
|---|---|---|---|---|
| [ ]Slopes to House | | [ ]Paving Stone | [ ]Gravel | [✓]Concrete | [ ]Asphalt |

### Walkway/Path
| | | | | |
|---|---|---|---|---|
| [ ]Slopes to House | | [ ]Paving Stone | [ ]Patio Block | [✓]Concrete | [ ]Asphalt |

TYPICAL MAINTENANCE TIPS & MINOR REPAIRS: Seal the walkway, porch,  driveway, wall to concrete joints and cracks to extend the life of the concrete and to reduce the risk of water infiltration into the basement.

21774-4238

Case ID: 120302334

**Pillar To Post**
*Professional Home Inspectors*
THE HOME OF HOME INSPECTION       Date: 16-Mar-2011          147 Watkins Street, Philadelphia, PA 19148

# Property and Site

## Porch
[ ] Unsecured    [ ] Metal    [ ] Wood    [✓] Concrete    [ ] Brick    [ ] Crack
[ ] Corrosion    [ ] Rot    [ ] Repaint

  Crack at rear patio. Seal as necessary.

## Lighting
[ ] None    [ ] Unsecured

## Receptacle
[ ] Damaged

  GFCI protected.

## Deck/Patio
[ ] Unsecured    [✓] Composite    [ ] Brick    [ ] Concrete    [ ] Metal
[ ] Slopes to House    [ ] Paving Stone    [ ] Patio Block    [ ] Stone    [ ] Crack
[ ] Deterioration    [ ] Mold    [ ] Rot

  Fourth floor roof deck.

  Re-caulking required at the stucco to coping joints and the brick to stucco joints at the deck.

## Railing
[ ] Unsecured    [✓] Metal    [ ] Wood    [ ] Incomplete    [ ] None

## Fence
[✓] Vinyl

# Exterior

## Foundation Wall
[✓] Not Exposed    [✓] Poured Concrete    [ ] Block    [ ] Brick    [ ] Stone
[ ] Exterior Rigid Insulation    [ ] PWF    [ ] Piling    [ ] Crack    [ ] Mildew
[ ] Stain    [ ] Frost Heave

  TYPICAL MAINTENANCE TIPS & MINOR REPAIRS:  Typical shrinkage cracks in the foundation walls are not a structural concern.  Seal the cracks to reduce the risk of water infiltration.

## Wall Surface
[ ] No Ground Clearance    [ ] Aluminum    [ ] Composite    [✓] Brick    [ ] Stone
[✓] Stucco    [ ] Vinyl Siding    [ ] Shingle    [ ] Split    [ ] Repaint    [ ] Repaint
[✓] Recaulk    [ ] Crack    [ ] Mildew    [ ] Stain    [ ] Blister

  TYPICAL MAINTENANCE TIPS & MINOR REPAIRS:  Seal all exterior dissimilar building materials.  Seal these joints to reduce the risk of water infiltration. e.g. masonry to siding joints, metal to masonry joints and stucco to wood joints.

Case ID: 120302334

**Pillar To Post**
*Professional Home Inspection*
THE HOME OF HOME INSPECTION    Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Exterior

## Windows
☐ Inspected with Binoculars     ☐ Storm         ☐ Unsecured      ☐ Repaint       ☑ Recaulk
☐ Weather-strip  ☐ Mildew       ☐ Stain         ☐ Poor Trim

TYPICAL MAINTENANCE TIPS & MINOR REPAIRS: Some of the windows are missing sealant around the exterior frame. Caulk around the windows, to reduce the risk of water infiltration and conserve energy.

## Doors
☐ Binds          ☐ Damaged      ☑ Storm         ☐ Unsecured      ☐ Repaint       ☑ Recaulk
☑ Weather-strip  ☐ Mildew       ☐ Stain         ☐ Split

RECOMMENDATION: Door locks were not checked as part of this inspection. As a security measure, have door locks re-keyed or replaced after settlement.

## Lighting
☐ None           ☐ Unsecured

## Receptacle
☐ Damaged        ☐ Install GFCI    ☐ Reverse Polarity           ☐ No Ground      ☐ Open Ground

All electrical repairs if any, are located on the electrical page of the report.

# Garage

## Type
☐ Attached       ☑ Built-In      ☐ Detached      ☑ Single         ☐ Double        ☐ Insulated
☐ Attic Access

## Door
☐ Binds          ☐ Damaged      ☑ Automatic     ☑ Sectional      ☐ Wood          ☑ Metal
☐ Adjust Auto Stop               ☐ No Safety Stop  ☐ Stain         ☐ Corrosion

TYPICAL MAINTENANCE TIPS: Grease the overhead garage doors to insure proper operation.

Holes in the metal overhead door. Replace panels as necessary for proper finish.

## Floor
☐ Crack          ☐ Settlement    ☐ Asphalt       ☑ Concrete       ☐ Gravel        ☐ Stain

## Wall
☐ No Fire Barrier  ☑ Drywall     ☑ Block         ☐ Wood           ☐ Stain

## Ceiling
☐ No Fire Barrier  ☑ Drywall     ☐ Crack         ☐ Wood           ☐ Stain

## Lighting
☐ None           ☐ Unsecured

Case ID: 120302334

**Pillar To Post**
THE HOME OF HOME INSPECTION    Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Garage

## Receptacle
[ ] Damaged      [ ] Install GFCI      [ ] Reverse Polarity          [ ] No Ground      [ ] Open Ground

## Circuit Wire
[ ] Concealed      [ ] Unsecured      [ ] Improper
Cover all open junction boxes, receptacles, light switches, exposed wires and do not use extension cords for personal and fire safety.

## Access Door
[ ] Auto Door Close                    [✓] Metal Clad      [ ] Wood          [ ] Composite      [ ] Gas Proof
[ ] Damaged      [ ] Stain          [ ] Corrosion

# Roof Structure

## Inspected By:
[ ] Binocular      [ ] Roof Edge      [✓] Walk On        [ ] No Access

## Limitations
[✓] Deck      [✓] Flat        [ ] Height        [ ] Steep Slope      [ ] Rain      [ ] Solar Panel
Could not inspect the roof covering, located under the roof deck.

## Main Roof
[✓] Flat      [ ] Gable        [ ] Valley        [ ] Hip          [ ] Shed      [ ] Other
Estimated Age 4-5                    Pitch Flat

Recommendation: With a visual inspection, there is no way to guarantee against future roof leaks. Therefore, it is important review the history of any past roof leaks with the owner and check all ceiling surfaces for water stains during the final walk through.

TYPICAL MAINTENANCE TIPS: Keep moss from growing on the roof covering, and keep trees trimmed away from the roof covering.

ROOF DESCRIPTION:

MAIN FLAT ROOF:
Modified rubber roofs last approx, 20-25 years.   Re-seal all flashing to help prolong longevity of roof life, as a maintenance program every two to three years.

## Gutter/Downspout
[ ] Unsecured      [✓] Aluminum      [ ] Galvanized      [ ] Copper      [ ] Plastic      [ ] Incomplete
[ ] Dent          [ ] Corrosion      [ ] Leak          [ ] Drainage Above Ground
[✓] Drainage Below Ground              [ ] Spill          [✓] Extended Leader
[ ] Redirect Leader  [✓] Clean

Suspect cloggage at downspout underground drain. Further investigation is

21774-4238

Case ID: 120302334



**Hilar To post**

THE HOME OF HOME INSPECTION   Date: 16-Mar-2011          147 Watkins Street, Philadelphia, PA 19148

# Roof Structure

necessary. $200-400

**TYPICAL MAINTENANCE TIPS & MINOR REPAIRS:** Keep gutters and down-spouts clean, sealed, aligned and secured to safely carry rain water away from the house.

Limitation: Could not inspect the interior of the below grade drain and sewer pipes. Inspection of the drains can be inspected with a special water proof pipe camera. Contact our office should you need this additional service.

### Fascia/Soffit
| | | | | | |
|---|---|---|---|---|---|
| ☐ Not Vented | ☑ Aluminum | ☐ Wood | ☐ Vinyl | ☐ Other | ☐ Loose |
| ☐ Mildew | ☐ Stain | ☐ Corrosion | | | |

### Covering
| | | | | | |
|---|---|---|---|---|---|
| ☐ Asphalt Shingle | ☐ Concrete | ☐ Wood Shingle | ☐ Wood Shake | ☐ Fiberglass Shingle | |
| ☐ Tar | ☐ Metal | ☐ Other | ☐ Nail Pop | ☐ Loose | ☐ Broken |
| ☐ Crack | ☐ Patched | ☐ Mildew | ☐ Stain | ☐ Worn | ☐ Curl |
| ☐ Fungus | ☐ Improper Installation | | ☑ Rubber | ☐ Slate | |

Repair the roof as necessary.  Observed the following area's are in need of repair.
1- There are a few open roof seams located at the firewall capping.
2- There is ponding water located at the front of the main roof and under the deck roof.
Have a qualified roof contractor evaluate the repairs. Estimated approximate cost to repair  $500-800

### Life Expectancy
| | | |
|---|---|---|
| ☐ Middle | ☑ Typical | ☐ Exceeded |

### Accessory
| | | | | | |
|---|---|---|---|---|---|
| ☐ Unsecured | ☑ Air Vent | ☑ Vent Stack | ☐ Turbine | ☐ Electrical Mast | ☐ Solar Panel |
| ☐ Skylight | ☐ Antenna | ☐ Dish | | | |

### Flashing
| | | | | | |
|---|---|---|---|---|---|
| ☐ Not Checked | ☐ Chimney | ☐ Dormer | ☑ Drip Edge | ☑ Flat Roof | ☐ Skylight |
| ☑ Roof to Wall | ☑ Stack | ☐ Valley | ☑ Roll Roofing | ☐ Aluminum | ☐ Copper |
| ☑ Rubber | ☑ Cap | ☐ Deterioration | ☐ Corrosion | ☑ Tarred | ☑ Reseal |
| ☐ Improper | ☐ Replace When Re-roofing | | | | |

**TYPICAL MAINTENANCE TIPS:** Roof flashing is the most critical component of the roof system. Keep flashing sealed and secured to prevent a water leak as a maintenance program. The roof flashing is tarred around chimney, keep tarred areas sealed to prevent water penetration.

Case ID: 120302334

**Pillar To Post**
*Professional Home Inspection*
THE HOME OF HOME INSPECTION™    Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Attic

## Limitations
☑ No Access   ☑ Sealed   ☐ Stored Items   ☐ Looked In   ☐ Entered   ☐ Hatch
☐ Pull Down   ☐ Insulated

No attic access, could not check structure, insulation and ventilation.

# Basement/Structure

## Sill Plate
☑ Concealed   ☐ Moisture Gasket   ☐ Mildew   ☐ Stain   ☐ No Anchors

## Slab on Grade
☑ Concealed   ☐ On Piling   ☐ On Brick   ☐ Floating   ☐ Crack   ☐ Frost Heave
☐ Settling   ☐ Leak

# Electrical Service

## Service Entrance
☑ Underground   ☐ Overhead   ☐ No Conduit   ☐ 120 - Volt   ☑ 120/240 Volt   ☐ Unsecured
☐ Frayed

## Entrance Cable
☑ Concealed   ☑ Aluminum   ☐ Copper

## Main Disconnect
☐ Switch/Cartridge Fuse   ☑ Breaker

## Disconnect Rating
☐ Have Electrician Evaluate
Amps 200

## Distribution Panel
☐ Not Opened   ☐ Non Standard Installation   ☐ Obstructed   ☐ Unsecured   ☐ Corrosion
☐ Obsolete
Location  Garage

Repair the electrical system as necessary.  Observed:
1- Abandon wires located at front brick wall.
2- recessed lighting at the fourth floor inoperable.
3- recessed lighting at the fourth floor bathroom inoperable.

Case ID: 120302334



**Pillar To Post**
THE HOME OF HOME INSPECTION   Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Electrical
# Service

Have a qualified contractor evaluate the repairs.
Estimated cost for repairs.  $400-600
Electrical circuits and components, including breaker switches, buss bar, electrical outlets, light switches and light sockets may fail at any time.

## Panel Rating
☑Room For Expansion
Amps 200

## Fuse
☑Breaker         ☐Glass           ☐Cartridge        ☐Time Delay       ☐GFCI Breaker     ☑AFCI Breaker
☐Blown           ☐Over-Fused

## Circuit Wire
☐Improper        ☐Aluminum        ☑Copper           ☐Copper Clad      ☐Other
☑Non-Metallic Sheathed            ☐Armoured Cable                      ☐Knob & Tub
☐Double Tapping  ☐Spliced         ☐Corrosion        ☐Scorched

## Grounding
☐Concealed       ☐Ground Rod      ☑Water Main       ☐Improper Connection              ☑Meter By-Pass
The integrity of the electrical ground system cannot be verified with a visual inspection.

# Heating

## Data Plate
☐Not Legible     ☐Incomplete
Model: Nordyne                     BTU Input: 100,000                  Estimated Age: 4-5
Furnaces are designed for 20 to 25 years of useful life.

## Limitations
☐Cleanout Does Not Open           ☐Oil Tank Not Visible               ☑System Operating in Heating Mode
☐System Shut Down                 ☑Ducts Concealed                    ☑Weather
Could not operate the A/C below 60 degrees.  Operating the A/C compressor below 60 degree could damage the compressor.  Have the owner provide documentation of the functionality of the unit.

## Smoke Detectors
☐Basement        ☑1st Floor       ☑2nd Floor        ☑3rd Floor        ☐Other
SAFETY TIPS: Recommend fire / smoke, carbon monoxide detectors in the basement and all sleeping area's for personal safety.  Contact your local fire marshal for best placement.215-686-1356

Recommend replacing smoke / fire, carbon monoxide detectors that are older than five years of age. Change the battery now and every year to insure proper operation.  Make a new fire escape plan with everyone in the house hold, after moving in your new home.

Case ID: 120302334

**Pillar To post**
THE HOME OF HOME INSPECTION™   Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Heating

## CO Detectors
☐Basement   ☐1st Floor   ☐2nd Floor   ☐3rd Floor   ☑Other

SAFETY TIPS: Recommend carbon monoxide detectors in the basement and all sleeping area's for personal safety.

A carbon monoxide test was performed and revealed no carbon monoxide. During the servicing of the heating system, make sure the contractor checks for carbon monoxide after adjusting the burners.

## Thermostat/Humidistat
☐Unsecured   ☐Programmable   ☑Standard

TYPICAL MAINTENANCE TIPS: Change the battery in the electronic thermostats every year to insure proper operation of the thermostat. Keep the thermostat coils clean free from dust for proper operation on conventional thermostats.

## Heating Fuel Source
☐Unknown   ☐Electric   ☑Gas

## Heat Type
☐Convector   ☑Forced Air   ☐Radiator

## Burner Type
☐Conventional   ☐Mid Efficiency   ☑High Efficiency

SAFETY TIP: Keep all flammable items such as paint and gas stored away from the heating and water heater systems to reduce the risk of a fire hazard.

## Heating System
☑Advise Service/Repair Contract

Typical maintenance:  Have the heating and cooling system balanced and serviced now and annually, to insure proper care and operation. $300-400
Recommendation: Contact your fuel utility company and sign up for the parts and labor plan.

## Air Requirement
☐Internal   ☑External   ☐Inadequate

## Venting
☐Flue   ☑Sidewall   ☐Metal   ☐Improper Rise   ☐Unsecured   ☐Corrosion
☐Sent   ☑PVC

## Life Expectancy
☑Typical   ☐Middle   ☐Exceeded

## Gas Burner
☐Not Checked

Limitation: The heat exchanger cannot be checked without dismantling the unit. Maintenance should

Case ID: 120302334

**Pillar To Post**
THE HOME OF HOME INSPECTION    Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Heating

Include cleaning the furnace and checking the heat exchanger annually. Thermal couplers and pilot ignition switches may expire at any time plan to replace when they fail.

## Burner
☐ Corrosion          ☐ Advise Adjustment

SAFETY TIP: Keep all flammable items such as paint and gas stored away form the heating and water heater systems to reduce the risk of a fire hazard.

## Ignition
☑ Electronic          ☐ Pilot & Thermocoupl

## Heat Shield
☐ Missing            ☐ Corrosion          ☐ Soot

## Motor/Blower
☑ Direct Drive       ☐ Noisy              ☐ Other

## Filter
☐ Electronic     ☑ Disposable     ☐ Permanent     ☐ Missing     ☐ Inoperable     ☐ Undersized
☐ Damaged       ☐ Dirty

TYPICAL MAINTENANCE TIPS: Air filters should be changed every three months, to insure proper operation of the air filtration system.

## Duct/Joint/Housing
☐ Unsecured         ☐ Corrosion          ☐ Kink

MINOR REPAIRS:  Some small openings are apparent in the visible duct work system.  Seal the small openings to insure proper operation of the air system.

Limitation: Could not inspect the air duct work under the concrete slab and in concealed area's.  Contact our office should you need and special camera to scan the interior sections of the vents.

## AC/Heat Pump
☐ Not Checked      ☐ Evaporative     ☑ Central      ☐ Geo-Therm     ☑ Air          ☐ Through Wall
☐ Damged Fins     ☐ Corrosion       ☐ Noisy        ☐ Loose         ☐ Unsecured    ☐ Not Level
☐ Dirty

AC unit located on the roof.

TYPICAL A/C  MAINTENANCE TIPS:  Keep clearance around the air conditioner condenser unit. Clearance should be at least 15" on all sides.  Keep the A/C compressor level at all times to insure long life and proper operation of the units.

The  air conditioners are designed for 10 to 15 years of useful life.

Case ID: 120302334

**Pillar To Post**
THE HOME OF HOME INSPECTION   Date: 16-Mar-2011          147 Watkins Street, Philadelphia, PA 19148

# Heating

## Condensation Line
☐Improper Drain  ☐Corrosion  ☐Leak  ☐Missing water collection pan

## Refrigerant Line
☐Unsecured  ☐Not Insulated  ☐Leak

# Plumbing Components

## Limitation
☐Finished Basement  ☐Private  ☐Private System

## Public Supply
☑Metered  ☐Concealed  ☐Lead  ☐Galvanized  ☐Plastic  ☑Copper

The water supply and drain pipes had functional flow at the time of the inspection. Ran water for several minutes and tested for leaks. All leaks if any, are reported on this page.

## Shut-Off Valve
☑Not Tested  ☐Corrosion  ☐Leak

## Hose Bibb
☐Not Checked  ☐Frost Free  ☐Anti-Siphon  ☐Shut-Off Valve  ☑Recaulk  ☐Unsecured
☐Corrosion  ☐Leak

TYPICAL MAINTENANCE TIPS: Shut off hose bibs prior to cold weather to prevent freezing.

## Distribution Piping
☑Concealed  ☐Lead  ☐Galvanized  ☐Plastic  ☑Copper
☐Dissimilar Material  ☐Unsecured  ☐Corrosion  ☐Leak

TYPICAL MAINTENANCE TIPS: Keep all water distribution pipes insulated to reduce the risk of pipes freezing and bursting, located in area's that have no heat.

## Waste Drainage
☐Concealed  ☐Galvanized  ☑Cast Iron  ☐Plastic  ☐Copper  ☐Odor
☐Unsecured  ☐Corrosion  ☐Leak  ☐Advise Septic Tank Checked

Could not view the entire sewer pipes and plumbing systems due to limitation of storage and appliances. Could not inspect the under side of the sewer pipes in close proximity of the ground and in concealed area's where pipes penetrate through walls and floors. Monitor all pipes bi monthly as a maintenance program. Cast iron drain pipes may split or crack in the future, plan on future repairs. No apparent problem at the time of the inspection.

21774-4238

Case ID: 120302334

**Pillar To Post**
*Professional Home Inspection*
THE HOME OF HOME INSPECTION®   Date: 16-Mar-2011          147 Watkins Street, Philadelphia, PA 19148

# Plumbing Components

## Vent Stack/Piping
☐ Concealed      ☐ Galvanized      ☑ Cast Iron      ☐ Plastic      ☐ Copper      ☐ Undersized
☐ Unsecured      ☐ Corrosion        ☐ Leak

## Main Cleanout
☐ Concealed      ☐ Improper Plug
Location Garage

## Hot Water Tank
☐ Hybrid Heating   ☐ Power-Vented   ☑ Own      ☐ Rent        ☑ Gas         ☐ Oil
☐ Wood           ☐ Electric        ☐ Dirty    ☐ Unsecured   ☐ Corrosion   ☐ Leak
☑ Bradford White
Age 4-5           Estimated Capacity I.G. 75

TYPICAL MAINTENANCE TIPS: Have a professional drain the water heater twice a year to remove dirty water and flush the water heater, to insure longevity of the unit.  Clean, adjust the burners, check the exhaust vent, perform a C.O. test and check the thermal coupler.  Philadelphia Gas Works has a parts and labor plan that can do this for you.

Recommendation: Consider installing a water heater collection pan.   To reduce the risk of water leaks in the interior.

Recommendation: Water temperature should be maintained at 125 degrees or less to reduce the risk of a personal injury.   The water temperature is controlled at the base of the water heater. The water temperature at the kitchen sink was measured at 130°.

The listed 75 gallon water heaters are designed for 10 to 15 years of useful life.

## Life Expectancy
☑ Typical      ☐ Middle         ☐ Exceeded

## Fuel Shut-Off
☐ Concealed
Location With in three feet

## Relief Valve
☐ No Test Lever      ☐ Corrosion       ☐ Other

## Discharge Tube
☐ Undersized      ☐ Discharge
SAFETY TIP & MINOR REPAIRS: discharge pipe not properly aligned with the drain.

## Venting
☐ Flue              ☑ Sidewall        ☐ Improper Rise   ☐ Unsecured   ☐ Corrosion   ☐ Soot
☐ Holes and gaps    ☑ CO Test performed

Case ID: 120302334

**Pillar To Post**

THE HOME OF HOME INSPECTION™   Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Plumbing
# Components

**Burn Chamber**
☑ Not Checked      ☐ Needs Adjustment

# Laundry

**Floor**
☐ Worn          ☐ No drain        ☑ Concrete      ☐ Vinyl        ☑ Wood        ☐ Ceramic

**Wall**
☐ Patched       ☐ Unfinished      ☑ Drywall       ☐ Brick        ☐ Wood        ☐ Ceramic

**Ceiling**
☐ Patched       ☐ Unfinished      ☑ Drywall       ☐ Stipple      ☐ Wood        ☐ Tile

**Door**
☐ Binds         ☐ Damaged         ☐ Pocket        ☐ Hinged       ☐ Wood        ☐ Composite
☑ Bifold

**Lighting**
☐ None          ☐ Unsecured

**Receptacle**
☐ Damaged       ☐ Install GFCI    ☐ Reverse Polarity              ☐ No Ground   ☐ Open Ground

**Trap/Drain**
☐ Unsecured     ☐ Improper Trap   ☐ Slow Drain    ☐ Corrosion    ☐ Leak

**Washer**
Make Maytag

TYPICAL MAINTENANCE TIP: If the washer is located in a finished room or on a 2nd floor.  Consider installing a washer pan to collect water should the washer seals fail.  To reduce the risk of water damage to the interior below.

**Dryer**
Make Maytag

**Dryer Vent**
☐ Unsecured     ☐ With Other Exaust              ☐ To Crawlspace  ☐ To Attic   ☐ Plastic Duct

TYPICAL MAINTENANCE: Dryer vent should be cleaned annually to insure proper operation. Could not determine the last service date for the dryer vent.

21774-4238

Case ID: 120302334

**Pillar To Post**
THE HOME OF HOME INSPECTION ™   Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Fireplace

**Type**
☑ Built-In      ☐ Free Standing    ☑ Gas Insert    ☐ Wood Insert    ☑ Metal Liner    ☐ Firebrick
☐ External Air Supply

**Fireplace Front**
☐ Soot      ☐ Brick      ☐ Ceramic      ☐ Marble      ☐ Stone

**Hearth**
☐ Raised      ☑ None

**Door/Screen**
☑ None      ☐ Binds      ☐ Glass      ☐ Metal      ☐ Mesh      ☐ Poor Fit
☐ Unsecured      ☐ Corrosion      ☐ Crack

**Firebox**
☐ Fan      ☐ Not Checked

**Damper**
☑ None      ☐ Sticks      ☐ Unsecured      ☐ Corrosion      ☐ Creosote

**Gas Insert**
☐ Fan      ☐ Not Tested

# Bathroom

**Location**
☐ Basement      ☑ 1st Floor      ☐ 2nd Floor      ☑ 3rd Floor      ☐ Other      ☑ 4th Floor

**Water Flow**
☑ Normal      ☐ Suspect      ☐ Low

The water supply and drain pipes had functional flow at the time of the inspection. Ran water for several minutes and tested for leaks.  All major plumbing repairs if any, are listed on the plumbing page of this report.

**Floor**
☐ Worn      ☐ Crack      ☐ Carpet      ☐ Vinyl      ☐ Wood      ☑ Ceramic

TYPICAL MAINTENANCE TIPS &  MINOR REPAIRS:  Seal the floor to wall joints in all bathrooms, to reduce the risk of a possible water leak.

**Wall**
☐ Patched      ☐ Crack      ☑ Drywall      ☐ Brick      ☐ Wood      ☐ Ceramic

21774-4238

Case ID: 120302334

**Pillar To post**
*Professional Home Inspection*
THE HOME OF HOME INSPECTION®   Date: 16-Mar-2011

147 Watkins Street, Philadelphia, PA 19148

# Bathroom

## Ceiling
☐Patched   ☑Crack   ☑Drywall   ☐Stipple   ☐Wood   ☐Tile

## Window
☐Binds   ☐Not Tested   ☑Double Hung   ☐Casement   ☐Sliding   ☐Bay
☑Thermal   ☐Metal   ☑Vinyl   ☐Wood   ☐Damaged   ☐Mildew
☐Stain   ☐Repaint   ☐Sky Light

## Door
☑Binds   ☐Damaged   ☐Pocket   ☑Hinged   ☑Wood   ☐Composite
   Some interior doors bind or do not latch.  Repair the doors to insure proper operation.

## Lighting
☐None   ☐Unsecured

## Receptacle
☐Damaged   ☐Install GFCI   ☐Reverse Polarity   ☐No Ground   ☐Open Ground
   GFCI protected.

## Exhaust Fan
☐Advise Installation

## Sink
☐Worn   ☐Chip

## Faucet
☐No Shut-off   ☐Sticks   ☐Unsecured   ☐Corrosion   ☐Leak

## Trap/Drain
☐Unsecured   ☐Improper Trap   ☐Slow Drain   ☐Corrosion   ☐Leak

## Vanity
☐Worn   ☐Unsecured   ☐Laminate   ☐Plywood   ☑Wood   ☐Metal
☐Scratch   ☐Mildew   ☐Missing Hardware

## Counter
☐Unsecured   ☐Solid Surface   ☑Granite   ☐Laminate   ☐Ceramic   ☐Regrout
☐Mildew   ☐Scratch   ☐Worn

## Toilet
☐No Shut-Off   ☐Tank Loose   ☐Unsecured   ☐Crack   ☐Leak

21774-4238

Case ID: 120302334

**Pillar To Post**
THE HOME OF HOME INSPECTION   Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Bathroom

### Tub/Enclosure
☐ Unsecured  ☑ Ceramic  ☐ Cultured Marble  ☐ Fiberglass  ☐ Plastic  ☑ Recaulk
☐ Mildew  ☐ Crack  ☐ Worn

TYPICAL MAINTENANCE TIPS & MINOR REPAIRS: Keep tub and shower enclosures caulked and grouted to prevent a water leak.

Third-floor bathroom tub stopper is inoperative.

### Jetted Tub
☐ Not Tested  ☐ GFCI Protected  ☐ Motor Access  ☐ Corrosion  ☐ Leak

### Faucet/Shower Head
☐ Not Tested  ☐ Sticks  ☐ Unsecured  ☐ Corrosion  ☐ Leak

### Shower Enclosure
☐ Unsecured  ☑ Ceramic  ☐ Cultured Marble  ☐ Fiberglass  ☐ Plastic  ☑ Recaulk
☐ Mildew  ☐ Scratch  ☐ Worn

### Mixer/Shower Head
☐ Not Tested  ☐ Sticks  ☐ Unsecured  ☐ Corrosion  ☐ Leak

### Heat Source
☐ None  ☐ Thermostat  ☐ Electric  ☑ Air Register  ☐ Radiator  ☐ Radiant

# Kitchen and interior

### Floor
☐ Worn  ☐ Crack  ☐ Carpet  ☐ Vinyl  ☑ Wood  ☐ Ceramic

### Wall
☐ Patched  ☐ Crack  ☑ Drywall  ☐ Brick  ☐ Wallpaper  ☐ Ceramic

### Ceiling
☐ Patched  ☐ Crack  ☑ Drywall  ☐ Stipple  ☐ Wood  ☐ Tile

### Window
☐ Blinds  ☐ Not Tested  ☑ Double Hung  ☐ Casement  ☐ Sliding  ☐ Bay
☑ Thermal  ☐ Aluminum  ☑ Vinyl  ☐ Wood  ☐ Damaged  ☐ Mildew
☐ Stain  ☐ Repaint

21774-4238

Case ID: 120302334

**Pillar To post**
THE HOME OF HOME INSPECTION     Date: 16-Mar-2011                    147 Watkins Street, Philadelphia, PA 19148

# Kitchen and interior

**Lighting**
☐None          ☐Unsecured

**Receptacle**
☐Damaged          ☐Install GFCI     ☐Reverse Polarity          ☐No Ground     ☐Open Ground
    All electrical repairs if any, are noted on the electrical page of this report.

    GFCI protected.

**Sink**
☐Worn          ☐Chip          ☐Single          ☑Double          ☑Stainless          ☐Enamel

**Faucet**
☐No Shut-Off Valve          ☐Sticks          ☐Unsecured          ☐Corrosion          ☐Leak

**Trap/Drain**
☐Unsecured          ☐Improper Trap     ☐Slow Drain          ☐Corrosion          ☐Leak
    All plumbing repairs if any, are noted on the plumbing page of this report.

**Counter**
☐Unsecured     ☐Ceramic          ☑Granite          ☐Laminate          ☐Solid Surface     ☐Regrout
☐Mildew     ☐Scratch          ☐Worn

**Cabinet**
☐Worn          ☐Unsecured     ☐Laminate          ☐Plywood          ☑Wood          ☐Metal
☐Missing Hardware          ☐Mildew          ☐Scratch          ☐Other

**Range Hood**
☑Cooktop Exhaust                    ☐Corrosion          ☐No Exhaust     ☐No Light     ☐Noisy
☑Recirculating

**Exhaust vent**
☐Unsecured     ☑Ductless          ☐Concealed          ☐With Other Exhaust                    ☐To Attic
☐Improper     ☐To Exterior

**BUILT IN APPLIANCES**
☑Tested on and off only

**Stove/Oven**
    GE.

**Dishwasher**

Case ID: 120302334

**Pilar To post**
*The Professional Home Inspection*
'THE HOME OF HOME INSPECTION'   Date: 16-Mar-2011                        147 Watkins Street, Philadelphia, PA 19148

# Kitchen and interior

GE.

## Garbage Disposal

InSinkErator.

## Microwave

GE.

## Refrigerator

GE. Refrigerator unplugged at time of inspection. Icemaker line is equipped with a filter. Change filter as necessary at regular intervals.

## Heat Source

| ☐ None | ☐ Thermostat | ☐ Electric | ☐ Air Register | ☐ Radiator | ☐ Radiant |
|---|---|---|---|---|---|

# All Interior                                                        All Interior

## Steps

| ☐ Split treads | ☐ Missing railing | ☐ Un even treads | ☐ Un secure | ☑ Wood |
|---|---|---|---|---|

## Floor

| ☐ Worn | ☐ Crack | ☐ Carpet | ☐ Vinyl | ☑ Wood | ☐ Ceramic |
|---|---|---|---|---|---|

## Wall

| ☐ Uneven | ☑ Crack | ☑ Drywall | ☐ Brick | ☐ Wood | ☐ Composite |
|---|---|---|---|---|---|

Nail pops and cracks in the drywall are typical. Repair all nail pops and cracks prior to painting.

## Ceiling

| ☐ Patched | ☑ Crack | ☑ Drywall | ☐ Stipple | ☐ Wood | ☐ Suspended |
|---|---|---|---|---|---|
| ☐ Tile | | | | | |

Monitor previous staining to ensure leak remains inactive.

## Window

| ☐ Binds | ☐ Not Tested | ☑ Double Hung | ☐ Casement | ☐ Sliding | ☐ Bay |
|---|---|---|---|---|---|
| ☑ Thermal | ☐ Aluminum | ☑ Vinyl | ☐ Wood | ☐ Damaged | ☐ Mildew |
| ☐ Stain | ☐ Repaint | ☐ Cracked | ☐ Painted shut | ☐ Jalousie | |

This house contains windows with thermal seals. These seals can crack or break at anytime. Check all seals again during walk through to insure the seals are not cracked.

The doors and windows were checked on a sampling basis and found to be in satisfactory condition. Some screens were missing.

Case ID: 120302334

**Pillar To Post**
Professional Home Inspection
THE HOME OF HOME INSPECTION™   Date: 16-Mar-2011

147 Watkins Street, Philadelphia, PA 19148

# All Interior

# All Interior

Be careful while operating the windows.  With double hung windows the upper sash may drop when the window is unlocked.

**Door**
☑ Binds  ☐ Damaged  ☐ Pocket  ☑ Hinged  ☑ Wood  ☐ Composite

Some interior doors bind or do not latch.  Repair the doors to insure proper operation.

**Patio/Door**
☐ Binds  ☐ Damaged  ☐ Sliding  ☑ Hinged  ☑ Wood  ☑ Metal

**Closet/Door**
☐ Binds  ☐ Damaged  ☑ Light  ☑ Hinged  ☑ Bi-Fold  ☐ Sliding
☐ Accordion

Some interior doors bind or do not latch.  Repair the doors to insure proper operation.

Damaged trim at bathroom linen closet doorway.

**Lighting**
☐ None  ☐ Unsecured

Could not operate some of the light fixtures, bulbs may be out.  Check all lights during walk through to insure proper operation.

**Ceiling Fan**
☐ None  ☐ Unsecured

**Receptacle**
☐ Damaged  ☐ Switched  ☐ Reverse Polarity  ☐ No Ground  ☐ Open Ground

All accessible receptacles were tested.  All electrical repairs if any, are noted on the electrical page of this report.

Cover all open and secure all loose junction boxes, light switches and outlets to reduce the risk of personal injury.

**Heat Source**
☐ None  ☐ Thermostat  ☐ Electric  ☑ Air Register  ☐ Radiator  ☐ Radiant

**Pictures**
☐ Images

21774-4238

Case ID: 120302334